**In re Melvin Andrew WITHROW, Debtor.**

**Bankruptcy No. C–B–87–00861.**

United States Bankruptcy Court, W.D. North Carolina.

Aug. 30, 1988.

---

O. Max Gardner, III, Shelby, N.C., for debtor.

Charles E. McCartney, Jr., Shelby, N.C., for Citibank (South Dakota), N.A.

## ORDER ASSESSING SANCTIONS AGAINST CITIBANK (SOUTH DAKOTA) NA

GEORGE R. HODGES, Bankruptcy Judge.

This matter is before the court on the debtor's motion for § 362(h) sanctions against Citibank (South Dakota) NA (hereinafter "Citibank"). For the reasons set forth below, the court finds that sanctions should be assessed.

### Facts

Prior to filing his bankruptcy petition, the debtor had VISA and MasterCard credit card accounts with Citibank. These accounts became delinquent. Citicorp Credit Services, Inc., the servicing agent for (and a sister corporation * of) Citibank, assigned the delinquent MasterCard account to Credit Claims and Collections of Atlanta. Credit Claims and Collections then assigned the MasterCard account to Atlanta attorney Frederick J. Hanna. Citicorp Credit Services, Inc. assigned the delinquent VISA account to Master Collectors, Inc., which then assigned the VISA account to Atlanta attorney Theodore A. Speaker.

Hanna and Speaker each wrote demand letters to the debtor dated October 2, 1986, and May 6, 1987 respectively. Each letter referred to "Citibank," and contained the correct amount due for the respective account. Credit Claims and Collections stopped collection efforts the MasterCard

---

* Both are subsidiaries of Citicorp, Inc. ("Citi-    corp").

account prior to August 1987, and Master Collectors stopped collection efforts on the VISA account in July 1987. However, no notice was ever given to the debtor that these debt collection agencies and attorneys were no longer acting as agents of Citibank for collection of the debt.

The debtor's Chapter 13 petition was filed on August 17, 1987. Written notice of the debtor's bankruptcy filing was mailed to Hanna and Speaker at their correct addresses and was received by them. On September 6, 1987, Citicorp Credit Services, Inc. assigned the MasterCard account to Penncro Associates, Inc., which wrote demand letters to the debtor on September 11, 1987, October 21, 1987, November 2, 1987 and November 12, 1987, all after the filing of debtor's petition.

### Discussion

I. *Notice:* The first issue here is whether Citibank had notice of the debtor's bankruptcy—specifically, whether notice of the bankruptcy sent to attorneys Hanna and Speaker constitutes notice to Citibank of the existence of the bankruptcy. If so, the subsequent assignment of the MasterCard account to Penncro Associates, and the demand letters written by Penncro on Citibank's behalf could constitute willful violations of the § 362 stay. If not, no stay violation occurred.

■ As a general rule of the law of agency, a principal is chargeable with and bound by notice given to the agent while the agent is acting within the scope of his authority and in reference to a matter over which his authority extends, although the agent does not inform the principal of the notice. *Norburn v. Mackie*, 262 N.C. 16, 136 S.E.2d 279 (1964).

■ Although Credit Claims and Collections and Master Collectors, Inc., and their attorneys Hanna and Speaker were no longer attempting to collect the debts when the debtor filed his petition, no one had notified the debtor of this. "Apparent authority, not otherwise terminated, terminates when the third person has notice of ... (a) the termination on the agent's authority ..." Restatement of the Law of Agency, 2d § 124. *See also Lucas v. Li'l General Stores*, 289 N.C. 212, 221 S.E.2d 257 (1976). The court finds from all of the circumstances that apparent authority did exist, as of the petition filing date, and never terminated with respect to the debtor, inasmuch as he never received notice of the termination of the agency. As a result, the court finds that Citibank was chargeable with and bound by the notices sent to Speaker and Hanna.

■ Citibank has argued that the debtor had invoices from which he could have obtained its address for direct notification of the bankruptcy and that notification of a distant agent is not sufficient in that circumstance. However, the most recent collection efforts by Citibank had been by attorneys Hanna and Speaker. The court finds that it was reasonable for the debtor to direct his notice to the people who had last contacted him. Citibank has apparently determined to pursue its collection efforts through agents sometimes three or four times removed from their principal. In those circumstances it is not incumbent upon the debtor to divine the most appropriate addressee, to investigate the current status of the agency relationship or to notify the principal directly. Because the debtor was never notified that Citibank's agents no longer represented it, his notice to those agents is reasonable and sufficient to subject Citibank to sanctions for violation of the automatic stay.

■ II. *Willful Violation of the Stay:* To amount to a willful violation of the automatic stay the subject actions must be "intentional and deliberate." *See Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 292 (4th Cir.1986). The offending collection efforts here were obviously "intentional and deliberate"—albeit without actual knowledge of the debtor's bankruptcy. But, knowledge of the bankruptcy is imputed to Citibank by the notice to its apparent agents. Consequently, subsequent collection actions by other of Citibank's agents constitute a willful violation of the stay by Citibank.

 While it may be argued that such imputation of notice would work a hardship, that is not the case here for several reasons: First, there was evidence offered of at least seven other stay violations by some Citicorp entity in the Western District of North Carolina in recent years. Second, Citibank elected to operate through a complex system of distant agents and must be responsible for consequences of breakdowns in that system. (It cannot create a complex system likely to produce stay violations and then assert the results of that complexity as a defense). Third, ultimately here, it was the failure of Citibank's own agents to pass along the debtor's notice that resulted in Citibank violating the automatic stay.

 III. *Damages:* Section 362(h) provides that the debtor "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Here, the debtor offered no evidence of actual damages beyond minor aggravation. Considering all of the circumstances of this case, the Court awards the debtor $100.00 in nominal actual damages, plus attorney's fees and costs to be determined upon application by debtor's counsel.

In assessing punitive damages, the court is aware of the other stay violation contested matters in which a Citibank or Citicorp entity has been involved, perhaps as a result of the convoluted system of agents, subagents and sister corporations that Citibank/Citicorp has set up. However, the court finds that punitive damages are not appropriate in this case.

It is therefore ORDERED that:

1. The debtor have and recover of Citibank the sum of $100.00, this amount to be paid to the debtor within thirty days of the date of this order;

2. The debtor is entitled to recover of Citibank reasonable attorney's fees and costs. Counsel for the debtor shall have ten days from the date of this Order to submit (and serve on Citibank, application for fees and costs detailing the time and expense relating to the subject motion. Citibank shall have ten days thereafter to respond to the Application. The court will then assess the amount of attorney's fees and costs due.