**In re Rebecca M. FISHER, Debtor.**

**Rebecca M. FISHER, Plaintiff,**

v.

**BLACKSTONE FINANCIAL SERVICES, INC., Blackstone Import and Michael J. Clemente, Jr., Alias d/b/a Repossession Unlimited and Raymond Jefferson, Defendants.**

**Bankruptcy No. 91–11753.**
**Adv. No. 91–1163.**

United States Bankruptcy Court,
D. Rhode Island.

Sept. 16, 1992.

Russell D. Raskin, Providence, R.I., for debtor, plaintiff.

Edward F. Grourke, Pawtucket, R.I., for defendants.

DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr.,
Bankruptcy Judge.

Heard on July 13, 1992 on the Debtor's Complaint for "turnover and for other relief related to willful violation of the automatic stay and for immediate injunctive relief." [1] The gist of this adversary proceeding concerns the Defendants' allegedly improper repossession of the Debtor's automobile from a parking lot adjacent to the courthouse, immediately following her initial § 341 meeting of creditors. The facts which unfolded at trial were rather disturbing and constitute one of the most flagrant violations of the automatic stay known to this Court.

Briefly, this is what happened: On June 28, 1991, Rebecca Fisher filed a Chapter 7

---

1. Although the Complaint caption indicates that the Debtor is seeking injunctive relief, and in paragraph 13 states that "[t]he Debtor is without adequate remedy at law and will be immediately and irreparably harmed if equitable relief is not granted," the prayers for relief do not request any form of injunction, but instead seek compensatory and punitive damages under 11 U.S.C. § 362(h), a legal remedy. Thus, the reference to injunctive relief is not sufficiently plead for this Court to act upon.

bankruptcy petition. Within a few days of the filing, she was contacted by a man identifying himself as Michael ·Clemente who stated that he had been hired to repossess her automobile, a 1982 Chrysler Fifth Avenue. Mr. Clemente also stated that if the Debtor failed to surrender the vehicle, she would be committing a "criminal felony." [2] Immediately after receiving this initial contact from Mr. Clemente, and being understandably upset, the Debtor contacted attorney F. Brian Adae, Esq. at 11:30 p.m., seeking legal advice. Mr. Adae immediately contacted Clemente by telephone and informed him clearly and unambiguously that (1) Ms. Fisher had recently filed bankruptcy; (2) her vehicle was protected from repossession by the provisions of the automatic stay; and (3) in order to repossess the car, the creditor must first seek and obtain relief from stay from the Bankruptcy Court.

Notwithstanding these emphatic admonitions, Clemente stated, inter alia that: *He didn't care if the Debtor had filed bankruptcy;* he wasn't satisfied that she had in fact filed (over the years he had become skeptical of such statements); he had a repossession order that he intended to carry out; and basically, *that was enough.*[3] With that state of mind, Clemente continued his quest to repossess the Debtor's vehicle, despite his actual knowledge that she was in bankruptcy and, after having been expressly warned of the protection of the automatic stay. We consider this conduct, *alone,* to be a willful violation of the automatic stay—but wait—it gets worse.

On July 31, 1991, the Debtor's § 341 meeting of creditors was held at the United States Trustee's office in the courthouse building. Ms. Fisher drove to Providence to attend the meeting and parked her car in the Snow Street parking lot immediately adjacent to the federal building.

Both Clemente and Raymond Jefferson, the manager of Defendant Blackstone Imports and Blackstone Financial Services, attended the meeting, and Jefferson questioned the Debtor as to the location of her automobile, and was told where it was parked. According to the Debtor, at this point it became clear to her that Clemente and Jefferson came to the meeting for the sole purpose of repossessing her automobile. Although there is disagreement as to whether the Chapter 7 Trustee consented to the Defendants' repossession of the vehicle, we accept the Trustee's testimony that he "would never advise a creditor to do this" and that he advised Clemente and Jefferson that "I don't think you have the right to take the car—but I'm not the Judge."

Nevertheless, immediately following the meeting, Clemente brought a van onto the parking lot where the Debtor's car was located, blocking it in, and started the repossession. The parking lot attendant on duty at the time, Ms. Sheryl Querceto, testified that she immediately called the Providence Police, and also advised Clemente that the lot was private property and ordered him to leave. Clemente refused.

Also at about this time, the Debtor's bankruptcy counsel, Russell Raskin, Esq., appeared on the scene and showed Clemente and Jefferson a copy of the Debtor's bankruptcy petition, and instructed them that it was "against the law" to repossess the vehicle in this manner. The Chapter 7 Trustee also arrived during this confrontation and confirmed Raskin's warning.

Despite all of these admonitions, the Defendants continued their repossession activities and, over the course of about two hours, did remove the Debtor's vehicle from the premises.

When questioned, Jefferson testified that he did not seek legal advice concerning his right to repossess the vehicle [4] but that

---

**2.** Apparently unable to reach the Debtor, Mr. Clemente left these messages with her mother.

**3.** Clemente also testified that Mr. Adae did not advise him of the effect of the automatic stay. However, based upon the record in this case, and the cavalier attitude of Clemente as to the

entire bankruptcy process, we reject his testimony as not credible.

**4.** The Defendants wanted to dwell upon the fact that the vehicle was unregistered and uninsured. These facts however, are an irrelevant red herring to this proceeding, and would only

instead he hired Clemente to handle the repossession at the § 341 meeting. Jefferson also testified that there was some confusion with respect to the name of the creditor listed in the Debtor's schedules, i.e., Blackstone Imports rather than Blackstone Financial Services, and also that he believed that the Trustee did not object to the repossession. We reject this testimony as neither credible nor relevant.

Whatever mitigating circumstances might have existed in this case,[5] however, they all evaporated once Mr. Clemente testified.

■ Initially, we rule that the very first telephone call Clemente placed to the Debtor following her bankruptcy filing, while she was represented by counsel, accusing her of engaging in criminal conduct, by itself, constitutes a serious violation of the automatic stay, *see In re Flynn*, 143 B.R. 798 (Bankr.D.R.I.1992), and this incursion alone calls for sanctions.

■ However, this is just the tip of the iceberg. Clemente's July 31, 1991 conduct (together with the assistance of and at the direction of Raymond Jefferson) in repossessing the Debtor's vehicle at the conclusion of the § 341 meeting, over the strenuous objection and warning of Debtor's counsel and the Trustee, advising him of the effect and protection of the automatic stay, constitutes a willful violation of the stay, and one clearly requiring the imposition of punitive damages. Clemente's actions appear even more egregious in light of his arrogant demeanor at the trial [6] vis-a-vis the Federal bankruptcy laws and the rights of the Debtor, both of which were flagrantly ignored.

We reject as completely contrary to the evidence, the Defendants' contention that their actions were conducted in good faith, and that they intended to effectuate a "legal" repossession. To the contrary, we find that the sole purpose of the Defendants in attending the § 341 meeting was to repossess the Debtor's automobile through the use of self help, and that they were prepared to use whatever force was necessary to complete the job, all without Bankruptcy Court authorization. Additionally, by choosing not to obtain legal advice as to how to go about realizing on its secured claim, the Defendant Blackstone [7] proceeded at its peril, and the same caveat applies to Clemente and Jefferson as agents of Blackstone.

Based upon the entire record, we find as a fact and conclude as a matter of law that the Defendants' conduct in (1) contacting the Debtor post-bankruptcy for the express purpose of harassing and threatening her; and (2) in forcefully repossessing her vehicle despite clear and repeated warnings against such action, constitute willful and malicious violations of the automatic stay within the meaning of 11 U.S.C. § 362(h), calling for the award of compensatory *and* punitive damages.

Accordingly, it is ORDERED that the Defendants are jointly and severally [8] responsible for (1) the Debtor's reasonable legal fees required by this proceeding, to be determined by the Court upon submission of an affidavit and corresponding fee application of counsel; (2) compensatory damages of $1,000 for the embarrassment

---

become significant had an appropriate motion for relief from stay been filed.

**5.** However, where confronted with inconsistent versions of the facts, we find in favor of the Debtor and her witnesses, whom we find were more credible than either Jefferson or Clemente.

**6.** Clemente testified that when Mr. Raskin showed him a copy of the Debtor's bankruptcy petition and demanded that he stop the repossession, "his words meant nothing to him [Clemente] at that time," "he was in the middle of the repossession and didn't care."

**7.** For these purposes, we treat Blackstone Financial Services, Inc. and Blackstone Import as the same basic entity.

**8.** We rule, for the purpose of this proceeding, that Clemente was the agent of Defendants Blackstone Financial Services, Inc., and Blackstone Import, and that *all* of his actions are attributed directly to them. In addition however, as Mr. Clemente is himself a named Defendant herein, this Order also runs personally against him.

and emotional distress intentionally inflicted upon her; and (3) punitive damages of $4,000 for the willful and malicious violation of the stay by the Defendants. *See In re Flynn,* 143 B.R. 798 (citing *In re Crysen/Montenay Energy Co.,* 902 F.2d 1098 (2nd Cir.1990) (malicious or bad faith violation of automatic stay justifies imposition of punitive damages)).