Laura Anne **AIELLO**, a/k/a **Laura Ann Power**, on behalf of herself and of a class of others similarly situated, Appellant,

v.

**PROVIDIAN FINANCIAL CORPORATION, f/k/a Providian Bancorp, Inc., Appellee.**

**No. 99 C 2811.**

United States District Court, N.D. Illinois, Eastern Division.

March 24, 2000.

In arriving at its decision, the bankruptcy court determined that, as a matter of law, Aiello had not suffered actual damages, which was, Judge Katz found, an essential predicate of her claim. *In re Aiello*, 231 B.R. 684 (Bankr.N.D.Ill.1999). In addition, the court denied class certification. *In re Aiello*, 231 B.R. 693 (Bankr.N.D.Ill. 1999).

Aiello now challenges the rulings of the bankruptcy court. For the reasons discussed herein, the judgments of the bankruptcy court are affirmed.

## I. Factual Background

On November 20, 1996, Aiello petitioned for an individual Chapter 7 bankruptcy. On January 3, 1997, Providian sent Aiello a reaffirmation agreement, pursuant to which she was asked to repay all or a portion of the debt she had accumulated on her VISA credit card account. Although Aiello's Chapter 7 petition disclosed that she was represented by counsel, she was sent the letter directly. That letter, formatted to look like a complaint, is quoted in relevant part in the bankruptcy court's opinion. *See* 231 B.R. at 687.

The day after receiving Providian's letter, Aiello met with her attorney. In the aftermath of the letter, Aiello states that she:

> cried, felt nauseous and scared and the letter caused [Aiello] to quarrel with her husband. [Aiello] believed that Providian had sued her as the reaffirmation agreement is drafted to look like a pleading. Because of Providian's phone call, Plaintiff would not answer any telephone calls until after the discharge order was entered. Even after her meeting with her attorney, Ms. Aiello was still frightened.

Providian also called Aiello on two occasions, allegedly in a threatening and demanding manner.[1] Aiello's bankruptcy counsel sent a letter to the bankruptcy

Daniel A. Edelman, John M. Broderick, Edelman, Combs & Latturner, Chicago, IL, for appellant.

## MEMORANDUM OPINION AND ORDER

COAR, District Judge.

Appellant Laura Anne Aiello ("Aiello") brought a class action suit against Appellee Providian Financial Corporation ("Providian"). Aiello alleged that Providian, in violation of 11 U.S.C. § 362(h), sent her and other bankruptcy debtors in the class a request to enter into a reaffirmation agreement. Although this case was originally filed in the district court, it was referred to the bankruptcy court, where it was assigned to Judge Erwin I. Katz.

On March 25, the bankruptcy court granted summary in favor of Providian.

---

1. The bankruptcy court noted that Aiello received three calls from Providian. Aiello, however, concedes that it "erred in stating that Providian called Aiello once after her counsel wrote Providian." *See* Reply Brief at n. 2.

trustee requesting Providian to cease contact with Aiello. Thereafter, Aiello refused to answer any telephone calls until after her discharge order was entered on March 3, 1997. Aiello suffered no out-of-pocket monetary damages as a result of the reaffirmation request.

## II. Standard of Review

■ Pursuant to Bankruptcy Rule 8013, a bankruptcy court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given the opportunity of the bankruptcy court to judge the credibility of the witnesses." A finding of fact is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948) (quoted in *In re Normco, Inc.,* 1997 WL 695722 (N.D.Ill. Oct. 31, 1997)). With respect to conclusions of law, however, this court will conduct a *de novo* review. *In re UNR Indus.,* 986 F.2d 207, 208 (7th Cir.1993).

## III. Analysis

*A. Summary Judgment*

Providian moved for summary judgement on the issue of whether Aiello suffered actual damages as a result of Providian's stay violation. The bankruptcy court found that Aiello's emotional distress was not, as a matter of law, compensable under § 362(h). Accordingly, the court granted Providian's motion. Aiello appeals the bankruptcy court's ruling.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Cox v. Acme Health Serv., Inc.,* 55 F.3d 1304, 1308 (7th Cir.1995). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Eiland v. Trinity Hosp.,* 150 F.3d 747, 750 (7th Cir.1998).

The movant bears the burden of establishing that there exists no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir. 1995). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Rule 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552–53. A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

■ Section 326 of the Bankruptcy Code provides that a bankruptcy petition operates as an automatic stay.[2] Under subsection (h), a debtor "injured by any willful violation of a stay provided in this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 326(h).

---

2. Section 326 specifically prohibits "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6)

Thus, two elements are necessary to recover damages under § 362. First, there must be a violation of § 362(a)'s automatic stay provision. Second, there must be an actual resultant injury. *See Archer v. Macomb County Bank,* 853 F.2d 497, 500 (6th Cir.1988) (stating that § 362(h) "requires a finding of actual injury"); *In re Sumpter,* 171 B.R. 835, 844 (Bankr.N.D.Ill.1994) (requiring debtor to "demonstrate that he has suffered actual injury as a result" of the stay violation); *In re Wright,* 156 B.R. 549, 552 (Bankr.N.D.Ill.1992). Actual injury must be proved with reasonable certainty, and mere speculation, guess or conjecture will not suffice. *Sumpter,* 171 B.R. at 842. *See also* 3 Collier on Bankruptcy § 362.11[3] at 362–118.1 n.18 (15th ed.1999) (stating that § 362(h) damages "must have a sufficient factual foundation").

Although the courts have been confronted with claims for emotional distress under § 362(h), damages have been determined on a case-by-case basis, with no expressly articulated principle guiding the decisions. Where the courts awarded actual damages, however, they consistently demand that plaintiffs be more than minimally upset or inconvenienced. For instance, in *In re Flynn,* 185 B.R. 89, 93 (S.D.Ga.1995), the debtor's checking account was frozen in violation of the automatic stay, forcing her to cancel her son's birthday party, and resulting in public humiliation when she was stopped at the check-out line at the supermarket because a previous check had bounced. The court awarded damages for emotional distress in the amount of $5,000.

In *In re Fisher,* 144 B.R. 237, 238 (Bankr.D.R.I.1992), the debtor was informed by a creditor that if she failed to surrender her automobile, she would be committing a criminal felony. Her attorney warned the creditor that the car was protected from repossession by the automatic stay provisions. *Id.* Not deterred in the least, the creditor approached the debtor at a meeting held at the bankruptcy trustee's office, and asked her where her car was parked. *Id.* When she pointed out the car, the creditor "brought a van onto the parking lot where the Debtor's car was located, blocking it in, and started the repossession." *Id.* The parking lot attendant advised the creditor that the lot was private property, but when he refused to leave, she called the police. *Id.* Over the course of about two hours, the creditor managed to remove the vehicle from the premises. *Id.* The court awarded $1,000 in compensatory damages for the emotional distress suffered by the debtor. 144 B.R. at 240.

Similarly, in *In re Carrigan,* 109 B.R. 167, 168 (Bankr.W.D.N.C.1989), the court awarded $1,000 in actual damages where the creditor's conduct was substantially offensive. Late one evening, the creditor went to the debtor's home to demand money. He repeatedly swore at and threatened the debtors, saying "I want my money right now . . . or you're going to regret it." *Id.* When told he should contact the debtors' lawyer, the creditor replied, "who that shithead . . . I don't want to talk to that son of a bitch, I want my money." *Id.* The court concluded that the creditor committed a "bodaciously flagrant violation of the § 362 stay—one which amounted to a breach of the peace and, but for the debtor's calm demeanor, could have precipitated violence." 109 B.R. at 170. The court also described the creditor's conduct as "personal, flagrant, profane, played out on the debtor's doorstep at night on the Sabbath, and wholly without excuse." *Id.* Thus, the debtor was deemed entitled to damages for the "great fear, stress and anxiety" he experienced as a result of the incident. *Id.*

The fact scenario presented in *In re Wagner,* 74 B.R. 898 (Bankr.E.D.Pa.1987) was also patently egregious. There, the creditor "burst into the debtor's home [one evening], shut the lights and, in the darkness, held up a finger to the debtor's head (as if he were holding a gun) and screamed. 'I'm not playing, next time I'm going to blow your brains out, bring a gun and I'll blow your brains out.'" 74 B.R. at

900–01. The creditor subsequently pled guilty to criminal harassment. *Id.* Under these circumstances, the court awarded the $100 for emotional distress. 74 B.R. at 905. In *In re Lohnes*, 26 B.R. 593, 596 (Bankr.D.Conn.1983), the court awarded $50 for emotional damages where the debtor's residence was sold in a foreclosure sale in violation of the automatic stay.

In the cases presenting egregious violations of the stay, the courts granted emotional distress awards without requiring proof beyond the debtor's own assertions of distress. Where, on the other hand, the courts have found the stay violation to be innocuous, they have denied an award of damages where no corroborative evidence of emotional distress has been presented. In *In re Diviney*, 211 B.R. 951, 967 (Bankr.N.D.Okla.1997), the court rejected the debtors' contention that they suffered emotional distress because of "humiliation, anguish and duress" where the debtors presented no medical testimony of their claim, and the "only evidence of any emotional distress is found in testimony that conversations between the Bank and the Debtors became heated at times, and that profanity was used in at least one of those conversations."

In *In re McHenry*, 179 B.R. 165, 166 (9th Cir. BAP 1995), the creditor telephoned the debtor to discuss his delinquent car payments. The creditor was told of the bankruptcy filing and was referred to the debtor's attorney. *Id.* The attorney confirmed the filing, and informed the creditor that the debt would not be reaffirmed, but that the automobile in which the creditor held a security interest would be returned to the creditor. *Id.* Without recontacting the attorney, the creditor called the debtor to arrange to pick up the vehicle. *Id.* The vehicle was repossessed in accordance with those arrangements. *Id.* The debtor claimed that the creditor's conduct upset his wife, also a debtor, and aggravated her illness. *Id.* Noting that the debtors had been "inconvenienced and annoyed," the court found

that a monetary award was unwarranted. 179 B.R. at 168.

The court in *In re Washington*, 172 B.R. 415, 427 (Bankr.S.D.Ga.1994), *vacated in part on other grounds*, 184 B.R. 172 (S.D.Ga.1995), denied the debtors any compensation for embarrassment and mental anguish caused by being informed of a levy on her wages at work. The court deemed the distress to be "fleeting and inconsequential." *Id.* The court in *In re Crispell*, 73 B.R. 375, 380 (Bankr.E.D.Mo.1987), adopted this language when it deemed uncompensable emotional distress suffered as a result of the creditor freezing the debtors' checking account. *Id.* The resulting distress, the court held, was "fleeting, inconsequential, and medically insignificant." *Id.* See also *In re Demp*, 23 B.R. 239, 240 (Bankr.E.D.Pa.1982) (debtor maintained that her distress was so severe that she had to visit her physician, but denying damages where no such evidence was produced); *In re Cusanno*, 17 B.R. 879, 881, 882 (Bankr.E.D.Pa.1982), *vacated*, 734 F.2d 3 (3d Cir.1984) (where checking account of $416.21 frozen in violation of stay, rejecting emotional distress claim because of "insufficient evidence on which to sustain an award of damages").

■ In summary, emotional distress must be more than "fleeting, inconsequential, and medically insignificant" to be compensable. *Crispell*, 73 B.R. at 380. Surely, this requisite severity can be established by medical or other supporting evidence. Where no medical evidence exists, however, emotional distress can be reasonably presumed where the stay violation is sufficiently offensive. The cases described above illustrate that such a presumption is justified when, for example, the debtor is physically threatened, *see, e.g., In re Wagner*, 74 B.R. at 900 (creditor breaking into debtors' house and threatening to "blow your brains out"); the violative act constitutes an invasive and personal attack, *see, e.g., In re Carrigan*, 109 B.R. at 170 (going to debtor's house to abusively demand money); or a

tangible and substantially adverse action results from the stay violation, *see, e.g., In re Flynn*, 185 B.R. at 93 (checking account frozen and debtor forced to cancel child's birthday party); *In re Fisher*, 144 B.R. at 239 (repossessing debtor's car at a creditor's meeting over the objections and warning of debtor's counsel); *In re Lohnes*, 26 B.R. at 593 (debtor's residence sold in foreclosure sale). Of course, this list is nonexhaustive and a presumption of emotional distress may be justified in other equally egregious situations. In contrast, where the violation of the stay, although technically a violation, is innocuous, alleged emotional distress is noncompensable without further substantiation.[3]

After undertaking much the same analysis, the bankruptcy court cogently summarized the law with respect to recovery for emotional damages under § 362(h). In an eloquent and soundly reasoned opinion, that court stated:

> The rule of law derived from these cases is that there must be some medical or other corroborating evidence to support the debtor's claim which shows that the debtor suffered something more than just fleeting and inconsequential distress, embarrassment, humiliation and annoyance. However, if the creditors' conduct is so egregious and extreme that one would normally expect emotional distress to occur, then the court may allow such damages without requiring additional evidence if it finds the debt-

or's testimony to be credible. The cases denying damages for emotional distress are not inconsistent with those that allowed it. They are just factually distinguishable from the extreme nature of the creditor's misconduct in the other cases.

231 B.R. at 691.

Aiello argues that the bankruptcy court set forth an erroneous legal standard. Aiello, however, misconstrues that courts' ruling. She contends that the bankruptcy court required "corroborating medical evidence" to establish emotional distress under § 362(h). Clearly, the bankruptcy court did not require medical evidence as an essential predicate to a claim for emotional distress damages. Instead, the court found that a plaintiff must present "medical or other corroborating evidence" of emotional distress or, in the alternative, an egregious violation that creates a presumption of emotional distress. *Id.* (emphasis supplied). As discussed above, the bankruptcy court's articulation of the legal standard fully comports with the case law.[4]

■ Applying that standard here, this Court finds that Aiello failed, as a matter of law, to set forth sufficient evidence of emotional distress. Aiello claims that she: cried, felt nauseous and scared, and the letter caused her to quarrel with her husband. [Aiello] believed that Providian had sued her as the reaffirmation agreement is drafted to look like a pleading. Because of Providian's phone call, Plaintiff would not answer any tele-

---

**3.** Aiello has managed to find one case that is the exception to this rule In *In re Withrow*, 93 B.R. 436, 439 (Bankr.W.D.N.C.1988), the court found that "the debtor offered no evidence of actual damages beyond minor aggravation." Nevertheless, the court awarded the debtor $100 in damages. *Id.* In light of the weight of the precedent, this Court disagrees with that holding.

**4.** Aiello also objects to the bankruptcy court's discussion of the tort of intentional infliction of emotional distress ("HED"). This Court agrees with the appellant that a showing of distress under § 362(h) is subject to a less

stringent standard than is the tort claim under state law. To buttress its decision, the bankruptcy court applied the facts of the instant case to the standards set forth in the tort law of HED. When the court articulated the rule of law in § 362(h) cases, it set the bar lower than that set in HED cases. Thus, when the court found that Aiello could not even surpass this lower threshold for establishing emotional distress, it was unnecessary to undertake the analysis again using the higher threshold under HED law. The court's extra efforts were unnecessary, and to the extent that they were misdirected, constituted harmless error.

phone calls until after the discharge order was entered. Even after her meeting with her attorney, Ms. Aiello was still frightened.

R. 26 at 4–6. As stated previously, however, Aiello was required to demonstrate that her emotional distress was more than insubstantial. To establish this requisite severity, Aiello could have presented medical or other supporting evidence. She did no such thing. In fact, she stated at her deposition that she sought neither medical treatment nor counseling.

In the absence of further evidence indicating that Aiello's emotional injury was sufficiently severe, Aiello could nevertheless recover under § 362(h) if a reasonable presumption of emotional distress could be made in light of Providian' conduct. Yet Providian's actions towards Aiello were not so offensive so as to trigger such a presumption. The reaffirmation letter, although styled as a pleading, could not be reasonably construed as more than a threat to sue in court. The letter stated: "We can file a complaint with the court .... If we are able to show that you did not have the intent to repay our debt at the time the charges were made we *may* be able to obtain a fraud judgment against you.... *We do not wish to file a complaint* to determine the dischargeability of this debt unless necessary and we think it would be in the best interest of all concerned to *avoid disputing this matter in court.*" (Emphasis supplied). Of course, threats and coercive tactics are objectionable. *See In re Duke*, 79 F.3d 43, 44 (7th Cir.1996). Yet the alleged threat was not, in this context, so egregious as to reasonably trigger emotional distress. In addition, the threat was not carried out, and no negative tangible actions flowed from the letter.

Rather, Aiello met with her attorney the day after receiving the letter and did not enter into the reaffirmation agreement. Aiello also received two phone calls from Providian, wherein the Providian representatives were "threatening and demanding." By that point, Aiello had visited her attorney and purportedly understood her rights. Thus, she must have known that Providian was merely making empty threats. Although Aiello refused to pick up the telephone for a period thereafter, she cannot be compensated for inconveniences. There were no threats of physical harm lodged against Aiello, and no one intruded into her home demanding a reaffirmation. Therefore, Providian's actions were not so offensive that emotional distress may be presumed.

Viewing the facts in a light most favorable to Aiello, this Court finds that she fails, as a matter of law, to demonstrate that a genuine issue exists for the jury. Aiello insists that whether she suffered compensable emotional distress is an issue of fact. She is correct. Yet an issue of fact must be "genuine" in order to defeat a motion for summary judgment. In other words, the evidence must be such that a jury could reasonably find in her favor. *See Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. On the facts presented, no reasonable jury could do so.

Moreover, Aiello contests the bankruptcy court's evidentiary ruling striking certain statements of fact concerning Providian's "intent" to instill Aiello with fear.[5] Specifically, Aiello put forth evidence of Providian's failure to supervise and train the employees who sent out the reaffirmation letters as well as evidence of Providian's "test program" targeting chapter 7 debtors. These statements, however, go to the issue of the willfulness of Providian's stay violation. As such, these stricken

---

**5.** In her opening brief on appeal, Aiello failed to present this issue to this Court. Instead, the stricken facts were scattered throughout the opening brief despite the bankruptcy court's ruling. Only in its reply brief did Aiello present the bankruptcy court's evidentiary ruling as an issue on appeal. A new issue raised for the first time in a reply brief is deemed waived. *James v. Sheahan,* 137 F.3d 1003, 1008 (7th Cir.1998); *Levine v. United States,* 25 F.Supp.2d 905, 909 (N.D.Ind.1998). Because Providian anticipated this issue in its response brief, however, this Court will address the matter on its merits.

statements are relevant to the predicate question of whether there exists a stay violation that qualifies under § 362(h). *See* 11 U.S.C. § 362(h) ("An individual injured by any *willful* violation of a stay provided by this section shall recover actual damages.") (emphasis supplied). However, they do not go toward the question of actual damages.

■ The issue of actual damages focuses the inquiry away from the wrongdoer and onto the injured victim. In the case law discussed above, the objectionable nature of the creditor's conduct was relevant only to extent that it cast an inference as to the victim's perceptions thereto. Thus, the critical question is not what Providian did behind the scenes, or even how "systematic" its wrongful practices were, but what Aiello experienced. The relevant matters, then, consisted of the letter that she received as well as the phone calls. The summary judgment motion only addressed Aiello's ability to establish damages. When the bankruptcy court rejected the contested statements of fact as irrelevant, it did so appropriately.

### B. *Class Certification*

■ The bankruptcy court also granted Providian's motion to strike Aiello's class allegations. Aiello challenges this ruling. The bankruptcy court's denial of class certification will be reviewed for abuse of discretion. *See Hewitt v. Joyce Beverages, Inc.*, 721 F.2d 625, 627 (7th Cir.1983).

■ The Supreme Court has declared that "even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 1925 n. 20, 48 L.Ed.2d 450 (1976). In affirming the bankruptcy court's summary judgment against Aiello, this Court determined that Aiello did not have a compensable claim. As a result, Aiello lacks standing to pursue the class action suit. *See Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (requiring that a plaintiff demonstrate a personal injury that is likely to be redressed by the requested relief to have standing to bring an action). Without standing to bring the claim in her own right, Aiello "cannot qualify as a representative of a class purporting to raise the same claim." *Foster v. Center Township of LaPorte County*, 798 F.2d 237, 244 (7th Cir.1986). Consequently, the class certification must be denied. *Id.* (dismissing class claims).

In arriving at its decision, the bankruptcy court undertook a lengthy analysis of the standards for class certification under Rule 23 of the Federal Rules of Civil Procedure. Without retracing that court's steps, this Court affirms the bankruptcy court's denial of class certification.

### IV. Conclusion

For the foregoing reasons, the bankruptcy court's rulings are affirmed.