**In re George E. DAWSON and Barbara J. Dawson, Debtors.**

**George Dawson and Barbara J. Dawson, Plaintiffs–Appellants,**

v.

**Washington Mutual Bank, F.A., successor to Great Western Bank, Defendant–Appellee.**

No. 02–16903.

United States Court of Appeals, Ninth Circuit.

Argued March 10, 2004.

Resubmitted April 23, 2004.

Filed May 18, 2004.

A. Charles Dell'Ario, Oakland, CA, for the plaintiffs-appellants.

William G. Malcolm, Malcolm Cisneros, Irvine, CA, for the defendant-appellee.

Before: HALL and GRABER, Circuit Judges, and WEINER,* Senior District Judge.

GRABER, Circuit Judge.

The main question in this case is whether a debtor may recover damages for emotional distress under 11 U.S.C. § 362(h) when a creditor violates the automatic stay that follows from the filing of a bankruptcy petition. Analogizing to Ninth Circuit cases that interpret the phrase "actual damages" in other federal statutes, and joining the Seventh Circuit, we answer that question "no."

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs George and Barbara Dawson bought a home located at 3490 Ridgewood Way, in Richmond, California ("the Property"). When they acquired the Property in 1987, they obtained from the predecessor of Defendant Washington Mutual Bank

---

* The Honorable Charles R. Weiner, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

("the Bank") a loan secured by a first deed of trust. In 1989, Plaintiffs executed a second deed of trust, to secure an obligation of $40,000, in favor of the Dixons, who were friends of Plaintiffs.

Beginning in 1993, Plaintiffs experienced difficulty in making their monthly mortgage payments to the Bank. On May 18, 1993, Plaintiffs filed a Chapter 13 bankruptcy petition and, in October of the same year, the Chapter 13 plan was confirmed.

Plaintiffs again failed to pay what they owed the Bank and, on July 1, 1994, the Bank filed a motion for relief from the automatic bankruptcy stay, 11 U.S.C. § 362. The Bank obtained an "adequate protection" order providing that the automatic stay would terminate on August 18, 1994, if Plaintiffs failed to make certain payments. They did fail to make the required payments; accordingly, the stay terminated. A foreclosure sale was scheduled for early 1995 but Plaintiffs tendered payment to the Bank just before the date set for the sale, so the foreclosure proceedings were discontinued.

In 1995 Plaintiffs made payments to the Bank, but for less than the amount due. Thus, on October 2, 1995, the Bank recorded a notice of default. On January 16, 1996, the Bank recorded a notice of sale, stating that a foreclosure sale would take place on February 8, 1996.

Meanwhile, in 1994 the Dixons had recorded a notice of default against the Property. On October 12, 1995, a foreclosure sale was conducted. On February 5, 1996, (a) a trustee's deed upon sale, transferring title to the Dixons, was recorded, and (b) the Dixons assigned the second deed of trust, transferring their interest, to relatives of Plaintiffs, the Jamesons. Plaintiffs and the Jamesons signed an unrecorded agreement entitled "Agreement Re: Foreclosure on 3490 Ridgewood Way, Richmond, California" ("the Jameson Agreement"). The Jameson Agreement provided that, after the Dixons' foreclosure of the property was complete and title was vested in the Jamesons: (1) Plaintiffs would "cure the foreclosure on the first deed of trust" and keep payments current thereafter; (2) Plaintiffs would arrange for a second loan to be secured by loan officer Joan Foggy, with the funds to be distributed as follows: (a) to the Jamesons, $45,000 plus fees, expenses, and $1,000 for their time and effort; and (b) to Plaintiff George Dawson's father, $12,000; with (c) any remainder to Plaintiffs; and (3) when the foregoing conditions were fulfilled, the Jamesons would deed the property to Plaintiffs. The Jameson Agreement provided for completion of all conditions within 30 working days from the date of execution.

On February 8, 1996, a grant deed was recorded, transferring the Dixons' interest in the property to the Jamesons. That was the same date set for the foreclosure sale. The sale did occur and the Bank took title to the Property on February 14, 1996. The Bank rescinded the foreclosure sale on August 8, 1996.

Just before the sale, on February 6, Plaintiff George Dawson had filed a Chapter 7 bankruptcy petition. Whether or when notice of that petition was provided to the Bank was in dispute below, but the bankruptcy court found that the Bank had knowledge of it by February 20, 1996, at the latest. On that date the Bank served on Plaintiffs a notice to quit the premises.

On February 27, 1996, the Bank instituted an unlawful detainer action against Plaintiffs. The Bank's lawyer in the unlawful detainer action received notice of the Chapter 7 bankruptcy filing on the same day, February 27. The Bank dismissed the unlawful detainer action on March 14, 1996. Plaintiff George Dawson's Chapter 7 bankruptcy case was closed on July 23, 1996.

Plaintiffs filed the present Chapter 13 bankruptcy case on June 2, 1998. The Bank filed a proof of claim as to Plaintiffs' debt, secured by the Property. Thereafter, Plaintiffs filed an adversary complaint, claiming (as relevant here) emotional distress damages under 11 U.S.C. § 362(h) for the Bank's violation of the automatic stay in George Dawson's Chapter 7 proceeding.

The bankruptcy court held, among other things, that the Jameson Agreement was an option agreement that did not convey any equitable ownership interest in the property to Plaintiffs and that the Bank's February 1996 foreclosure sale, therefore, did not violate the automatic stay. Because the February 1996 foreclosure sale was not wrongful, the bankruptcy court awarded the remedy of rescission and restored the parties to their prior positions as if that sale had never occurred. As part of this remedy, the bankruptcy court held that Plaintiffs owed the Bank for loan payments that accrued between February and August 1996 (when the Bank rescinded the sale). Further, the bankruptcy court held that the Bank did violate the stay between February 20 and March 14, 1996 (when the Bank dismissed the unlawful detainer action). The court nonetheless denied George Dawson's claim for emotional distress damages on the ground that no nexus appeared between the Bank's violation of the automatic stay and the emotional distress claimed. Finally, the bankruptcy court awarded Plaintiffs attorney fees and costs in the amount of $2,307.60.

The district court affirmed all the bankruptcy court's holdings save one. The court held that the Jameson Agreement was actually a marketing contract that *could* transfer an equitable interest in the property to Plaintiffs. Therefore, the Bank may have violated the automatic stay with its February 1996 foreclosure sale, because Plaintiffs may have had an equitable interest in the property at the time. However, whether they actually held such an interest depended on several facts (such as whether the Jameson Agreement's requirements had been fulfilled) that were in dispute. Therefore, the district court remanded the case to the bankruptcy court for further findings on this and related issues.

■ Plaintiffs timely appealed to this court.[1]

## STANDARDS OF REVIEW

■ We review de novo a district court's decision on appeal from a bankruptcy court. *Batlan v. Transam. Commercial Fin. Corp. (In re Smith's Home Furnishings, Inc.)*, 265 F.3d 959, 962–63 (9th Cir.2001). That is, we review the bankruptcy court's decision independently and give no deference to the district court's determinations. *Id.* at 963.

We review for clear error the bankruptcy court's findings of fact, but we review de novo its conclusions of law. *Id.*

■ A bankruptcy court's award of attorney fees is reviewed for abuse of discretion or erroneous application of the law. *Cal. Employment Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1152 (9th Cir.1996).

---

1. The Bank filed no cross-appeal. Therefore, the Bank's argument that we should *reverse* the district court's holding that Plaintiffs held equitable title to the Property is not properly before us. *See El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 479, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999) (holding that, in the absence of a cross-appeal, an appellee may urge affirmance of the lower court's ruling on any basis appearing in the record, "but may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary" (internal quotation marks omitted)).

## DISCUSSION

### A. *Jurisdiction*

■ As a threshold matter, the Bank asserts that we lack jurisdiction because the district court's order is not "final" within the meaning of 28 U.S.C. §§ 158(d) and 1291. We have acknowledged that "questions regarding finality sometimes arise when, as here, a district court reverses a final order of a bankruptcy court but also remands for further proceedings." *N. Slope Borough v. Barstow (In re Bankr.Estate of MarkAir, Inc.)*, 308 F.3d 1057, 1060 (9th Cir.2002).

> We resolve such questions of finality through a pragmatic approach; a district court's decision can be considered final for the purpose of appellate review even when a question has been remanded to the bankruptcy court.
>
> If the matters on remand concern primarily factual issues about which there is no dispute, and the appeal concerns a question of law, then the policies of judicial efficiency and finality are best served by our resolving the question now. On the other hand, if the district court remands for further factual findings related to a central issue raised on appeal, the district court's decision is usually not final.

*Id.* (citations and internal quotation marks omitted).

At first blush, that passage might appear to suggest that we lack jurisdiction.

The district court reversed the bankruptcy on a central issue in the case, *viz.*, whether the Jameson Agreement transferred equitable title in the property to Plaintiffs, and remanded the case for further factual findings. But this *appeal* concerns primarily a question of law, and indeed a question of first impression in the Ninth Circuit: When, if ever, are damages for emotional distress recoverable under 11 U.S.C. § 362(h) for a violation of the automatic stay? Our answer will not obviate the need for all further fact-finding, but it *will* materially aid the bankruptcy court in reaching its disposition on remand. *See MarkAir, Inc.*, 308 F.3d at 1060.[2]

If the bankruptcy court were to find that the foreclosure sale violated the automatic stay, for example, the question of what damages are available would be amplified.

In the circumstances, we conclude that the district court's order is "final" within the meaning of 28 U.S.C. §§ 158(d) and 1291. Accordingly, we have jurisdiction and proceed to the merits.[3]

### B. *Claim for Emotional Distress Damages*

■ Plaintiffs argue that the district court erred in affirming the bankruptcy court's refusal to award emotional distress damages to George Dawson, allegedly arising out of the unlawful detainer action. They rely on the text of 11 U.S.C. § 362(h): "An individual injured by any

---

**2.** The Bank relies on *Stanley v. Crossland, Crossland, Chambers, MacArthur & Lastreto (In re Lakeshore Vill. Resort, Ltd.)*, 81 F.3d 103 (9th Cir.1996). There, we held that we lacked jurisdiction over an appeal from a district court order vacating and remanding a bankruptcy court's order. However, there is no suggestion in *Lakeshore* that a novel question of law, which would affect the disposition of the case on remand, was presented.

**3.** In addition to raising the issue of emotional distress damages, Plaintiffs claim on appeal

that the district court erred when it held that, as part of the rescission, they were responsible for making payments to the Bank between February 8, 1996, and August 8, 1996. Plaintiffs failed to raise this issue in the district court. Therefore, we decline to consider it. *See Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 210 (3d Cir.2000) ("We note that the [debtors'] brief to the District Court did not raise equitable mootness.... Thus, the [debtors] did not properly preserve the equitable mootness argument for appeal.").

willful violation of a stay provided by this section shall recover *actual damages,* including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." (Emphasis added.) Emotional distress damages, they say, are one type of "actual damages." They also rely on *Fisher v. Blackstone Financial Services, Inc. (In re Fisher),* 144 B.R. 237, 239 (Bankr.D.R.I.1992), in which a bankruptcy court ordered a creditor to pay emotional distress damages on account of "willful and malicious violations of the automatic stay."

We are not persuaded by Plaintiffs' argument for two reasons. First, the text of § 362(h) suggests that it is aimed at economic damages. In § 362(h), "actual damages" are said to "includ[e] costs and attorneys' fees," which are kinds of economic harm. Moreover, and more importantly, the term "actual damages" is used in a variety of federal statutes, not directly related to tort claims, and has been interpreted to refer to economic harm alone.

One example is found in our copyright jurisprudence. Section 504(b) of the Copyright Act states that a "copyright owner is entitled to recover the *actual damages* suffered by him or her as a result of the infringement." 17 U.S.C. § 504(b) (emphasis added). We recently explained in *Mackie v. Rieser,* 296 F.3d 909, 917 (9th Cir.2002), *cert. denied,* 537 U.S. 1189, 123 S.Ct. 1259, 154 L.Ed.2d 1022 (2003), that the phrase "actual damages" means only financial losses:

> We have previously defined the phrase "actual damages" as "the extent to which the market value of a copyrighted work has been injured or de-

stroyed by an infringement." [*Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,* 772 F.2d 505, 512 (9th Cir. 1985) ] . . . .

This case presents a slightly different twist. The record is replete with testimony from [Plaintiff] and his experts that the infringement did not in any way influence the market value of "The Tango." Perhaps recognizing this reality, [Plaintiff] sought to introduce evidence of his personal objections to the manipulation of his artwork. Although it is not hard to be sympathetic to his concerns, the market value approach is an objective, not a subjective, analysis. Consequently, [Plaintiff's] subjective view, which really boils down to "hurt feelings" over the nature of the infringement, has no place in this calculus. *See* Paul Goldstein, *Copyright,* § 12.1.1, at 12:14 (2002) (noting that actual damages, and its accompanying "market value" test, is "essentially an objective rather than a subjective measure of damages").

We have held similarly with reference to the meaning of the term "actual damages" in the Securities Act. In *Ryan v. Foster & Marshall, Inc.,* 556 F.2d 460, 464 (9th Cir. 1977), we observed: "Defendants argue that it was error for the trial court to submit to the jury the plaintiffs' claim for mental suffering and punitive damages. Both sides agree that only actual damages can be recovered under the Securities Acts. *See* 15 U.S.C. § 78bb(a). *Actual damages mean some form of economic loss.*" (Emphasis added.)

The second reason for our disagreement is the persuasive reasoning of the Seventh Circuit.[4] In *Aiello v. Providian Financial*

---

4. The First Circuit is the only other circuit to consider this question, and it decided the issue the other way. *See Fleet Mortgage Group, Inc. v. Kaneb,* 196 F.3d 265, 269 (1st Cir. 1999) ("[W]e note that emotional damages qualify as 'actual damages' under § 362(h).").

The *Kaneb* opinion cited several bankruptcy court opinions in support of this holding (and one that is contrary), but did not engage in any substantive analysis. For the reasons discussed below, we side with the Seventh Circuit.

*Corp.,* 239 F.3d 876, 878 (7th Cir.2001), a creditor threatened to charge a Chapter 7 debtor with fraud if she refused to reaffirm her debt. The debtor refused; the creditor did not bring a fraud action; but the debtor filed a class action against the creditor, seeking damages for emotional distress. *Id.* On appeal from the bankruptcy court, the district court held that damages for emotional distress are available under 11 U.S.C. § 362(h), but only when the violation of the stay is "egregious." *Aiello v. Providian Fin. Corp.,* 257 B.R. 245, 250–51 (Bankr.N.D.Ill.2000). Because the violation was not "egregious" and there was little evidence of emotional distress, the district court refused to award damages for emotional distress; and, because the debtor had not suffered "actual damages" within the meaning of the statute, she could not represent the putative class. *Id.* at 253.

The Seventh Circuit affirmed, but took a different approach, explaining:

> The automatic stay is primarily for the protection of the unsecured creditors as a group. The stay prevents (without need to ask a court for an injunction) a race by the creditors to seize the debtor's assets, a race that by thwarting the orderly liquidation of those assets would yield the creditors as a group less than if they are restrained.... A debtor bludgeoned into waiving his right of discharge is denied the protection of bankruptcy law.

> That protection, however, is financial in character; it is not protection of peace of mind. Bankruptcy is a harrowing experience, for the bankrupt but sometimes for the creditors as well. The Bankruptcy Code was not drafted with reference to the emotional incidents of bankruptcy, however, and bankruptcy judges are not selected with reference to their likely ability to evaluate claims of emotional injury. That is not to suggest that victims of tortious infliction of emo-

tional distress in the course of a bankruptcy proceeding are orphans of the law. A creditor who resorts to extortion or intimidation exposes himself to a suit under state tort law. The automatic stay is not an obstacle, because it does not apply to suits by the debtor.

> The office of section 362(h) is not to redress tort violations but to protect the rights conferred by the automatic stay. If one creditor muscled out the others in violation of the stay, the bankruptcy court would impose monetary sanctions under subsection (h). If the defendant here had intimidated the debtor into giving up her right of discharge, the bankruptcy court would have ordered under the authority of the same subsection the monetary relief necessary to restore her to the financial position she would have occupied had the defendant not resorted to intimidation. The interest in judicial economy, as embodied in the "clean-up" doctrine of equity, might allow the court to "top off" relief designed to redress any financial injury inflicted by the violation of the automatic stay with an award of damages for incidental harms, perhaps including emotional distress if adequately proved, to spare the debtor from having to bring two suits.... No financial injury is alleged in this case, and we do not think that emotional injury is compensable under section 362(h) when there is no financial loss to hitch it to by means of the clean-up doctrine.

*Aiello,* 239 F.3d at 879–80 (citations omitted).

We are persuaded by the Seventh Circuit's approach. The interests served by § 362(h) are economic. To be sure, intentional infliction of severe emotional distress sometimes can occur when a creditor willfully violates an automatic bankruptcy stay. State laws, however, provide tort remedies for intentional infliction of severe

emotional distress, and § 362(h) does not duplicate those tort remedies. We hold that "actual damages" under § 362(h) do not include damages for emotional distress. Therefore, the district court and the bankruptcy court did not err.

## C. *Attorney Fees*

Plaintiffs claimed more than $50,000 in attorney fees. They sought fees in connection with George Dawson's Chapter 7 case and also in connection with the present case.

On the Chapter 7 claim, the bankruptcy court held that Plaintiffs were entitled to fees generated in obtaining dismissal of the unlawful detainer action. The court held that only an hour of attorney time was required to remedy the stay violation and awarded Plaintiffs $200. Plaintiffs did not appeal this portion of the fee award.

With respect to the present case, the bankruptcy court ruled that Plaintiffs were entitled to *some* fees because they had established a single item of damages: the $200 award. However, the court found Plaintiffs' request to be "grossly disproportionate to the cost of litigating the issue in question." Observing that Plaintiffs prevailed on only 1 of 20 issues, the court awarded one-twentieth of Plaintiffs' costs and fees in litigating the action. The bankruptcy court also held that the hourly rate actually charged by Plaintiffs' counsel represented the reasonable value of his services. The court therefore divided the total fees and costs incurred in the action ($42,152.12) by 20, arriving at the sum of $2,107.60. Adding in the $200 from the Chapter 7 case, the total award was $2,307.60.

The district court held that the bankruptcy court did not abuse its discretion in determining the amount of attorney fees and costs to which Plaintiffs were entitled. The district court further held that if, on remand, the bankruptcy court finds that

the Bank's foreclosure sale violated the automatic stay, the bankruptcy court will have to decide whether Plaintiffs are entitled to a larger award of fees.

On appeal to us, Plaintiffs argue that the bankruptcy court erred in calculating both the time that counsel reasonably expended and the hourly rate. We are not convinced by Plaintiffs' arguments.

■ As to the time expended, Plaintiffs' counsel gave only a rough estimate of what proportion of the total time in the case related to the single successful issue. That estimate was not corroborated and the bankruptcy court was entitled to find that the estimate substantially overstated the hours reasonably expended on the unlawful detainer issue. "Substantively, both the Supreme Court and our cases have emphasized the discretionary nature of the court's determination of the number of hours *reasonably* expended." (*Cunningham v. County of L.A.,* 879 F.2d 481, 484 (9th Cir.1988)). Cunningham also explains that inadequate documentation is a factor the court properly may consider in assessing the appropriate number of hours. Additionally, even where evidence supports a particular number of hours worked, the court may give credit for fewer hours if the time claimed is "excessive, redundant, or otherwise unnecessary." *Id.* at 484 (internal quotation marks omitted). The court did not abuse its discretion in determining that the reasonable amount of time spent on the unlawful detainer issue represented five percent of counsel's total time.

■ With respect to the hourly rate, the bankruptcy court did not assume that the charged rate was the appropriate lodestar rate *only* because it was the rate actually charged. *Cf. Cedic Dev. Co. v. Warnicke (In re Cedic Dev. Co.),* 219 F.3d 1115, 1117 (9th Cir.2000) (reversing a fee determination when the rates actually charged "were bargain rates"). Rather, the bankruptcy

court considered the quality and efficiency of counsel's services. The court's conclusion that $200 per hour was a reasonable rate is not an abuse of discretion.

In short, the bankruptcy court and district court permissibly calculated fees and costs. As the district court noted, a recalculation may be required as a result of the remand to the bankruptcy court, but no error in the award of fees and costs appears to date.

AFFIRMED.