**In re Charles E. STINSON, Debtor.**

**Charles E. Stinson, Appellant/Cross–Appellee,**

**v.**

**Bi–Rite Restaurant Supply Inc.; Cook, Perkiss & Lew, Appellees/Cross–Appellants.**

**BAP Nos. NC–02–1094–RyKJ, NC–02–1116–RyKJ.**
**Bankruptcy No. 93–41032.**
**Adversary No. 99–04161.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Feb. 20, 2003.

Filed June 12, 2003.

Phyllis Voisenat, Law Offices of Phyllis Voisenat, Oakland, CA, for Charles E. Stinson.

Jerry R. Hauser, Phillips, Greenberg and Hauser, LLP, San Francisco, CA, for Cook, Perkiss & Lew, APC.

Eric A. Nyberg, Kornfield, Paul, Bupp & Nyberg, Oakland, CA, for Bi–Rite Restaurant Supply.

Before RYAN, KLEIN, JONES,[1] Bankruptcy Judges.

### OPINION

RYAN, Bankruptcy Judge.

After Charles E. Stinson ("Debtor") filed a chapter 13[2] petition, Bi–Rite Restaurant Supply, Inc. ("Bi–Rite") obtained a state judgment in excess of $21,000 (the "State Judgment") against Debtor. After Debtor's case was dismissed, he filed another chapter 13 petition. Debtor then filed a complaint (the "Complaint") against Bi–Rite and its counsel, Cook, Perkiss & Lew ("CPL"),[3] for violating the automatic stay in obtaining the State Judgment.

After trial, the bankruptcy court entered a judgment (the "Judgment") against Bi–Rite for emotional distress damages and attorney's fees. Debtor timely appealed, and Bi–Rite timely cross-appealed.

We AFFIRM in part, VACATE in part and REMAND.

1. Hon. Robert Clive Jones, Bankruptcy Judge for the District of Nevada, sitting by designation.

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

3. Unless otherwise indicated, Bi–Rite and CPL will be collectively referred to as "Bi–Rite."

### I. FACTS

In February 1993, Debtor filed his first chapter 11 petition. In April 1993, Sonoma Valley Pizza ("SVP"), a California corporation owned by Debtor's father, applied for and obtained credit from Bi–Rite. In April 1994, after SVP failed to pay Bi–Rite, it commenced a collection action in state court. In order to resolve the litigation, SVP entered into an agreement (the "Agreement") with Bi–Rite, stipulating to a judgment of $26,365.85 (the "SVP Judgment"). Pursuant to the Agreement, Debtor guaranteed (the "Guarantee") the SVP Judgment on May 27, 1994. Shortly before the Agreement, Debtor's case was converted to chapter 7, and he received a discharge in September 1994.[4]

In 1995, after Debtor failed to make payments under the Guarantee, Bi–Rite filed a complaint against Debtor in state court (the "State Action").

In April 1996, Debtor filed a chapter 13 petition. Debtor listed the Bi–Rite obligation in his bankruptcy schedules. In July 1996, Debtor's case was dismissed.

Thereafter, Bi–Rite obtained a November 21, 1996 trial date in the State Action. However, on August 14, 1996, Debtor filed another chapter 13 petition. Again, Debtor listed the Bi–Rite obligation in his bankruptcy schedule. Bi–Rite filed a proof of claim for $23,000.

4. The sequence of conversion to chapter 7 occurring before the Guarantee was executed is crucial to the analysis of this appeal because pre-conversion debts are treated as pre-petition debts eligible for a chapter 7 discharge. See 11 U.S.C. §§ 348(d), 727(b). If the sequence had been reversed, the Guarantee debt would have been discharged, which creates a defense that cannot be waived. See 11 U.S.C. § 524(a); Costa v. Welch (In re Costa), 172 B.R. 954, 961 (Bankr.E.D.Cal. 1994).

Debtor failed to attend two scheduled § 341(a) meetings in the third bankruptcy case, and the chapter 13 trustee's minutes of the last § 341(a) meeting indicate "case dismissed." This fact was reported by Debtor's counsel to Bi–Rite's counsel, CPL. The court did not, however, dismiss (the "Dismissal") the case until December 4, 1996.

In the interval between the § 341(a) meeting and when the court actually dismissed the case, the State Action proceeded to trial. Debtor did not appear, and Bi–Rite obtained the State Judgment. An abstract of judgment was promptly recorded. The automatic stay, however, had not been lifted to permit either the trial to be held or the State Judgment to be entered and recorded.

Notice of the Dismissal was sent to CPL on behalf of Bi–Rite. CPL did not seek to have the automatic stay retroactively annulled or the State Judgment re-entered.

Nearly one year later, in late 1997, Debtor's counsel sent CPL a letter pointing out that the State Judgment had been entered in violation of the automatic stay. CPL even then did not act to correct the situation.

In July 1999, Bi–Rite sought to enforce its State Judgment by selling Debtor's home and posting a foreclosure notice at Debtor's house.

In August 1999, Debtor filed the Complaint: (1) seeking to enjoin Bi–Rite from enforcing the State Judgment; (2) seeking damages for Bi–Rite's violation of the discharge injunction; (3) alleging that Bi–Rite obtained the State Judgment in violation of the automatic stay; (4) alleging that

CPL's enforcement efforts constituted deceptive and unfair practices under federal and state laws; (5) claiming an invasion of privacy right against CPL; and (6) asserting severe emotional distress. Debtor requested compensatory and punitive damages and attorney's fees.

CPL answered denying all allegations,[5] except it admitted that it knew of Debtor's chapter 13 bankruptcy at the time of the continued § 341(a) meeting in November 1996. CPL asserted that Debtor's nonappearance at the § 341(a) meeting was a voluntarily abandonment of his bankruptcy case. CPL also stated that it was advised by Debtor's counsel that the case was dismissed. According to CPL, Debtor's counsel said that it could go forward with the trial in the State Action and that Debtor would not attend the trial because there was no defense. Therefore, CPL argued that it did not willfully violate the automatic stay. CPL also prayed for attorney's fees.

CPL and Bi–Rite further argued that the automatic stay terminated on November 19, 1996, when the chapter 13 trustee's minutes noting "case dismissed" were docketed. In addition, they requested annulment of the automatic stay.

After trial,[6] the bankruptcy court held that Bi–Rite had willfully violated the automatic stay because: (1) it failed to confirm that Debtor's chapter 13 case was dismissed before proceeding to trial in the State Action; (2) it recorded abstracts of judgment; and (3) it attached liens to Debtor's home after receiving notice of the stay violation.

---

**5.** It is unclear in the appellate record (the "Record") whether Bi–Rite answered the Complaint. Clearly, CPL answered the Complaint on its own behalf. Nonetheless, CPL and Bi–Rite filed a joint trial brief.

**6.** After a three-day trial, with the exception of the violation of the automatic stay claim, the court dismissed all other claims in the Complaint.

Acting under § 362(h), the court awarded Debtor $26,065.37 in attorney's fees and costs and $13,000 for emotional distress. It denied punitive damages because Bi–Rite's conduct was insufficiently egregious. It also denied Bi–Rite's request to annul the automatic stay as "without legal merit."

The court rejected Debtor's initial fee and cost application for $130,326.86 as insufficiently detailed and encompassing services unrelated to § 362(h). It directed Debtor's counsel to revise the fee application, warning counsel that failure to comply with the court's order to amend its request by providing more detail and eliminating noncompensable services could result in a pro rata award reflecting the ratio of the claims upon which Debtor prevailed to the total claims, multiplied by the number of hours spent.

When Debtor's counsel did not adequately comply, the court, citing *Coxson v. Commonwealth Mortgage Co. (In re Coxson)*, 43 F.3d 189 (5th Cir.1995) (affirming pro rata fee award), awarded $26,065.37, or twenty percent of the request based on Debtor's successful claims. It also made clear that the award included costs.

In denying punitive damages, the court balanced "a three-time debtor lacking in credibility" against "[an] over-aggressive collection attorney" and concluded that there were insufficient egregious factors to warrant an award of punitive damages. Findings of Fact, Opinion and Conclusions of Law (Jul. 10, 2001), at 19.

Debtor timely appealed, and Bi–Rite timely cross-appealed.

## II. ISSUES

A. Whether the court violated Debtor's due process rights.

B. Whether the court erred in denying annulment of the automatic stay.

C. Whether the court erred in awarding attorney's fees in the amount of $26,065.37 to Debtor.

D. Whether the court erred in awarding emotional distress damages to Debtor.

E. Whether the court erred in denying punitive damages to Debtor.

F. Whether Debtor is entitled to attorney's fees on appeal.

## III. STANDARD OF REVIEW

■ We review whether the court violated an individual's right to due process de novo. *See Duff v. United States Trustee (In re California Fid., Inc.)*, 198 B.R. 567, 571 (9th Cir. BAP 1996) (citation omitted).

■ We review the court's refusal to annul the automatic stay retroactively for an abuse of discretion. *See Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 18 (9th Cir. BAP 2003); *see also National Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1054 (9th Cir.1997).

■ We review the court's assessment of damages under § 362(h) for an abuse of discretion. *See Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 7 (9th Cir. BAP 2002).

## IV. DISCUSSION

A. *The Court Did Not Violate Debtor's Due Process Rights.*

■ Debtor contends that the court's award of fees on a pro rata basis to reflect the percentage of claims on which Debtor prevailed violated his due process rights. He reasons that the Ninth Circuit, unlike the Fifth Circuit, has never held that a pro rata bankruptcy fee award is appropriate and that he was not afforded a full and adequate hearing on the fee application.

The Fifth Amendment provides in pertinent part that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law ...." U.S. CONST. AMEND. V. "The fundamental requisite of due process of law is the opportunity to be heard." *Dusenbery v. United States,* 534 U.S. 161, 173, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) (citation omitted). "This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Id.* (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Further, in order to satisfy the demands of due process, the opportunity to be heard "need not be a full adversarial hearing but must be preceded by adequate notice and must afford [the party] a meaningful opportunity to speak in [his] own defense." *Matthews v. Harney County, Or., Sch. Dist. No. 4,* 819 F.2d 889, 892 (9th Cir.1987). The essence of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

At trial, the court indicated that it would bifurcate liability and "deal with attorney's fees and ... other damages later." Tr. of Proceedings (Mar. 16, 2001), at 33. On May 29, 2001, the court held a hearing on attorney's fees. According to the court:

> [I]t is simply unacceptable to have submitted time sheets that (a) appear to have some serious problems with them, but (b) make no attempt whatsoever to break out any of the time categories and to attempt to show how these entries are related in some way to the action under 362(h), which is the only action that—in [Debtor's] complaint that [he] prevailed on ....

> And I can't—I will not and cannot attempt to sort through $136,000 in fees, which is an enormous amount of time to have spent on this matter, to find which of the time entries specifically relate to the 362(h) action.

> I should tell you, I am going to give you two weeks to present a document which (a) must comply with the local fee and expense guidelines of this district in every respect; and (b) which specifically identify the time entries that relate to 362(h) portion of your complaint.

Tr. of Proceedings (May 29, 2001), at 3–4.

The court then continued the hearing to give Debtor the opportunity to amend his application for fees. Debtor filed an amended fee application, which Bi–Rite opposed. Later, the court took the continued hearing off calendar and issued its Findings of Fact and Conclusions of Law on July 10, 2001. According to the court:

> Despite giving [Debtor's] counsel ample opportunity to correct the glaring deficiencies in their initial submission [of the fee application], their amended application is not much better than the first one. Rather than making a sincere effort to cull out entries unrelated to the section 362(h) claim, counsel has attempted instead to rejigger the time entries in an attempt to attribute them to the section 362(h) claim.

Findings of Fact, Opinion and Conclusions of Law (Jul. 10, 2001), at 16.

On appeal, Debtor contends that his due process rights were violated because he was not afforded a full and adequate hearing on the amended fee application. The Record, however, is clear that there was an actual hearing that was continued in order to afford Debtor an additional opportunity to present an adequate fee application and that, in connection with that continuance, Debtor received explicit notice that a further hearing would be held only

if it was "necessary." Tr. of Proceedings (Mar. 16, 2001), at 34. Debtor had his day in court on the attorney's fees issue and was provided with additional time to amend his fee application to comply with the court's order. He failed to comply.

As stated above, the requirements of due process are satisfied even without a full adversarial hearing so long as Debtor was given adequate notice and the opportunity to be heard. *See Harney County,* 819 F.2d at 892. Here, Debtor did have an actual hearing, which was continued to afford him the opportunity to present an amended fee application. He was not deprived of the opportunity to present evidence. Thus, he had an opportunity to be heard at "a meaningful time and in a meaningful manner." *Boettcher v. Secretary of Health & Human Servs.,* 759 F.2d 719, 723 (9th Cir.1985). Because Debtor deliberately ignored the court's order, the continued hearing on the amended fee application was not "necessary." Therefore, the court did not violate Debtor's due process rights by not having the continued hearing. *Harney County,* 819 F.2d at 892.

Further, Debtor has cited no law that supports a due process violation for a mere disagreement with the bankruptcy court's ruling. Accordingly, the court did not violate Debtor's due process rights by awarding attorney's fees on a pro rata basis after affording Debtor an opportunity to make a more specific showing.

B. *The Court Did Not Err in Denying the Annulment of the Automatic Stay.*

■ The court denied Bi–Rite's request to retroactively annul the automatic stay because it was "without legal merit." On cross-appeal, Bi–Rite contends that the court erred because it should have exercised its equitable powers under § 362(d) to grant retroactive relief from stay.

■ Section 362 provides in pertinent part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

11 U.S.C. § 362(d)(1). Therefore, § 362(d) "gives the bankruptcy court wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay." *National Envtl. Waste Corp.,* 129 F.3d at 1054.

We have stated that:

in deciding whether to grant relief from stay retroactively, many courts focus on two factors: "(1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." However, in addition to considering these two factors, a court must "balance [ ] the equities in order to determine whether retroactive annulment is justified." Such a determination necessarily involves a "case by case analysis."

*Palm v. Klapperman (In re Cady),* 266 B.R. 172, 179 (9th Cir. BAP 2001), *aff'd,* 315 F.3d 1121 (9th Cir.2003) (internal citations omitted).

■ We recently re-emphasized that stay annulment decisions are to be assessed by balancing equities on a case-by-case basis. *See Fjeldsted,* 293 B.R. at 21–24.

Here, the court refused to retroactively lift the automatic stay because Bi–Rite had clear notice of Debtor's bankruptcy:

Mr. Cook [Debtor's counsel] was put on full and complete notice that there

was a bankruptcy filed. He promptly filed a proof of claim ... but nonetheless cavalierly pursued a trial date that could not take place until the case was dismissed. And rather than determining for a fact that the case had been dismissed, he relief [sic] upon Mr. Smyth, debtor's counsel, to give him the go-ahead to pursue his trial on November the 21st, 1996. Mr. Cook is no stranger to Bankruptcy Court ... And Mr. Cook knew or should have known better than anyone that Mr. Smyth couldn't grant him relief from the automatic stay.

Tr. of Proceedings (Mar. 13, 2001), at 155.

The court also balanced Debtor's delay in asserting the automatic stay defense against CPL's long-term failure to take steps to correct the problem. CPL knew about the problem in December 1996 when it received notice of the Dismissal, but did nothing to correct the problem at that time. Further, after Debtor specifically raised the stay violation issue with CPL a year later, CPL "obdurately refused to do anything" to correct the problem:

[H]ad [Mr. Cook] checked to make sure that Mr. Smyth was correct, he would have found that he wasn't correct and that the case wasn't dismissed until after the trial was over, making his judgment at that point void ... and more significantly, even after he was informed that the judgment was void, he obdurately refused to do anything about removing not one but two judgments, two abstracts of judgment for the same judgment, from the records of the court. He could just as easily, even if he had violated the automatic stay, he could have mitigated the damages therefrom almost entirely by saying, "All right. I might have gotten a judgment, but now I'm going to have to go back and do it all over again because in fact I was in viola-

tion of the stay, so I can get a valid judgment."

Tr. of Proceedings (Mar. 13, 2001), at 155–56.

On appeal, Bi–Rite contends that cause existed to justify a retroactive annulment of the stay because CPL relied on "the affirmative statements of Debtor's attorney that the bankruptcy judge dismissed the case and Bi–Rite could proceed to [the State Action] trial ...." Appellee's Reply Brief (Dec. 23, 2002), at 1. The court properly weighed these statements against the extensive experience of Bi–Rite's counsel and found such reliance unreasonable. This finding has not been appealed. Therefore, this factor does not weigh in favor of Bi–Rite.

Bi–Rite further alleges that Debtor filed the August 1996 chapter 13 case in bad faith. Nonetheless, Bi–Rite offers nothing more specific than repeat filings to support its contention that the case was filed in bad faith. At trial, the bankruptcy court properly rejected Bi–Rite's sole argument that repeat filings equate to bad faith filings.

Finally, Bi–Rite contends that the alleged stay violation caused no injury or prejudice to any party. To be sure, the relative harmlessness of a stay violation is a typical feature of meritorious motions to annul the stay.

Nevertheless, the assessment of the equitable balance to annul occurs when the issue is presented to the court. Here, if a motion had been made in December 1996, the equitable balance might have warranted annulling the stay. However, the years of obduracy by Bi–Rite before the request to annul the stay was made presented the court with a different inventory of facts to balance. We construe the court's ruling that the request was "without legal merit" to be a ruling that, by the time the annulment request was made, the balance had

tipped heavily against Bi–Rite. We cannot say that the court abused its discretion in this analysis.

■ A bankruptcy court has "wide latitude" in granting or denying annulment of the stay. *See Fjeldsted,* 293 B.R. at 21; *see also National Envtl. Waste Corp.,* 129 F.3d at 1054. Here, the court properly balanced the equities in refusing to grant relief from stay retroactively. Therefore, it did not err in denying the annulment of the automatic stay.

C. *The Court Did Not Err in Awarding Attorney's Fees in the Amount of $26,065.37 to Debtor.*

Debtor contends that the court's award of fees on a pro rata basis offends the "actual damages" requirement of § 362(h).

■ Section 362(h) provides that an individual injured by a willful violation of the stay "shall recover actual damages, including costs and attorney's fees ...." 11 U.S.C. § 362(h). The words "shall recover" indicate that "Congress intended that the award of actual damages, costs and attorney's fees be mandatory upon a finding of a willful violation of the stay." *Roman,* 283 B.R. at 7. A violation of the stay is willful if: "the creditor knew of the automatic stay and intentionally performed the actions that violated the stay; and neither a good faith belief that the creditor had a right to the property nor good faith reliance on the advice of counsel is relevant." *Barnett v. Edwards (In re Edwards),* 214 B.R. 613, 620 (9th Cir. BAP 1997).

■ Under the plain language of § 362(h), the injured party must be awarded the entire amount of actual damages

"reasonably incurred as a result of a violation" of the automatic stay. *Beard v. Walsh (In re Walsh),* 219 B.R. 873, 876 (9th Cir. BAP 1998) (citing *Stainton v. Lee (In re Stainton),* 139 B.R. 232, 235 (9th Cir. BAP 1992)). Therefore, an award of attorney's fees under § 362(h) must be reasonable. *See Roman,* 283 B.R. at 11.

In *Coxson,* the debtors purchased a property giving a promissory note. After defaulting and filing a chapter 13 petition, the debtors claimed that the note violated state usury law, that the loan documents violated the Federal Truth in Lending Act, and that the creditor violated the automatic stay. *See Coxson,* 43 F.3d at 190. The court found for the debtor on the violation of the automatic stay claim, and for the creditor on the remaining claims. Based primarily on a contract provision in the note, the court awarded the parties a prorated amount of their legal fees. *Id.*

■ Here, the court found that Bi–Rite had willfully violated the automatic stay. During a continued hearing on attorney's fees, the court specifically warned Debtor of the consequence if he failed to comply with its order:

I reserve the right to follow the approach used in *Coxon [sic] v. Commonwealth Mortgage Company of America* ... wherein the Fifth Circuit Court of Appeals ... simply took the percentage of the claims upon which the debtor was successful and multiplied it times the number of hours spent.

Tr. of Proceedings (May 29, 2001), at 4–5.

In his amended fee application, Debtor did not segregate the time spent on the automatic stay violation claim from the other claims.[7] Therefore, we cannot say

---

7. Initially, Debtor filed a "Proposed Statement of Attorney's Fees and Costs Incurred" and requested a total of $136,711.11 in fees and costs, which represented 640.79 hours of work incurred by his attorney. Subsequently, Debtor amended and reduced his fee application statement and requested $130,326.86 (attorney's fees of $116,254.31 and costs of

that the court erred in finding that Debtor simply "rejigger[ed] the time entries in an attempt to attribute [the fees] to the section 362(h) claim." Findings of Facts, Opinion and Conclusions of Law (July 10, 2001), at 16.

The court tried to get Debtor to adequately segregate and describe the attorney time related to the stay violation from the other time. Debtor failed to comply with this request. This placed the court in the difficult position of having to determine the reasonableness of the fee request without adequate information. It was not up to the court to struggle through a myriad of time entries and guess as to what time actually pertained to the stay violation and make arbitrary allocations. This was Debtor's task, and after being given a fair opportunity to comply, Debtor failed to adequately respond to the court's appropriate request.

Under these circumstances, it was within the court's discretion to prorate the requested fees based on the proportion of claims on which Debtor succeeded. Therefore, we cannot say that the court's adoption of the *Coxson* approach was unreasonable in this context.

Accordingly, the court did not err in awarding fees in the amount of $26,065.37 to Debtor.

D. *The Court Erred in Awarding Emotional Distress Damages to Debtor.*

The court awarded Debtor emotional distress damages pursuant to § 362(h) in the amount of $13,000. On cross-appeal, Bi–Rite contends that the court erred because: (1) Debtor did not seek any medical treatment and his distress consisted only of loss of sleep; (2) the stress stemmed from the current litigation and not the alleged stay violation; and (3) Debtor did not suffer any economic injury as a result of the stay violation.

The Ninth Circuit has not spoken on the award of emotional distress damages in the § 362(h) context, and there seems to be an embryonic division of opinion among other courts of appeal.

The Seventh Circuit has held that emotional distress is not compensable under § 362(h) in the absence of financial injury. *See Aiello v. Providian Fin. Corp.,* 239 F.3d 876, 879–80 (7th Cir.2001). It reasoned that the automatic stay protection is "financial in nature" and is not intended to protect "peace of mind." *Id.* at 879. "The Bankruptcy Code was not drafted with reference to the emotional incidents of bankruptcy . . . and the bankruptcy judges are not selected with reference to their likely ability to evaluate claims of emotional injury." *Id.* The Seventh Circuit was particularly concerned about the "potential for abuse" because "[emotional distress] [is] so easy to manufacture." *Id.* at 880–81. Therefore, unless the debtor suffers a financial loss, the Seventh Circuit would deny emotional distress damages under § 362(h). *Id.* at 881. Nonetheless, the

$14,072.55), which represented 608.74 hours of work incurred by his attorney.

The Record shows that Debtor included almost the identical claims for attorney's fees in his amended application and attributed the fees to the § 362 claim without support. Some of the requested fees were clearly not related to the § 362 claim. For example, six hours were incurred in 1998 to draft the Complaint, which included all six causes of action. Another seven hours were incurred to review the "Bi–Rite v. Stinson" file, but Debtor did not indicate the scope of the review. Further, about six hours were incurred in 2000 to prepare the pre-trial order, which also included issues on other claims in the Complaint. Debtor also incurred fees for "research in Lexis," but did not explain whether the research was related to the § 362 claim.

*Aiello* court was careful to note that "victims of tortious infliction of emotion distress in the course of a bankruptcy proceeding" are not without remedies because their remedies lie under state tort law. *Id.* at 880.

The First Circuit, in contrast, has held that "emotional damages qualify as 'actual damages' under § 362(h)." *Fleet Mortgage Group, Inc. v. Kaneb,* 196 F.3d 265, 269 (1st Cir.1999). There, the creditor attempted to foreclose on the debtor's property in violation of the automatic stay by publishing a foreclosure notice in a local newspaper. The debtor testified that as a result of the creditor's action, he "d[idn't] sleep well" and his "eating habits ha[d] changed." *Id.* at 270. Further, there was a "sharp decline in social invitations and outings" after the debtor's neighbors became aware of the foreclosure proceedings. *Id.* at 269.

The First Circuit declined to address the issue of whether physical injury or corroborating medical testimony are required to recover for emotional distress damages under § 362(h) because the creditor failed to raise the arguments before the bankruptcy court. *Id.* Nonetheless, based on the debtor's testimony, the *Fleet Mortgage* court affirmed the bankruptcy court's award of emotional distress damages of $25,000. *Id.*

We agree with the concern expressed by the Seventh Circuit that emotional distress claims under § 362(h) present an opportunity for abuse. We accept as did the Seventh Circuit that under appropriate circumstances emotional distress damages may be recovered as "actual damages" under § 362(h). "And, as we said earlier, if [the debtor] could show that [he] had suffered a loss within the contemplation of section 362, which is to say a financial loss, [he] might be permitted to piggyback a claim for damages for incidental emotional distress." *Aiello,* 239 F.3d at 881. If the significant economic loss involves primarily attorney's fees, the attorney's fees must primarily redress the harm caused by the stay violation.

Initially, we note that although the court specifically rejected *Aiello* and adopted *Fleet Mortgage* in awarding emotional distress damages of $13,000 to Debtor, case law has not provided a meaningful standard for determining when emotional distress damages are appropriate under § 362(h).[8] Therefore, we turn to the Restatement for guidance.

---

8. In fact, emotional distress damages under § 362(h) "have been determined on a case-by-case basis, with no expressly articulated principle guiding the decisions." *Aiello v. Providian Fin. Corp.,* 257 B.R. 245, 249 (N.D.Ill. 2000).

The majority of the courts have denied damages for emotional distress "where there is no medical or other hard evidence to show something more than a fleeting or inconsequential injury." *Taylor v. United States (In re Taylor),* 263 B.R. 139, 152 (N.D.Ala.2001); *see also In re Parker,* 279 B.R. 596, 604 (Bankr.S.D.Ala.2002); *Patton v. Shade,* 263 B.R. 861, 867 (C.D.Ill.2001); *Diviney v. NationsBank of Texas (In re Diviney),* 211 B.R. 951, 967–68 (Bankr.N.D.Okla.1997).

Where no medical or corroborating evidence exists, some courts have allowed emotional distress damages if the stay violation was offensive and egregious. *See e.g. United States v. Flynn (In re Flynn),* 185 B.R. 89, 93 (S.D.Ga.1995) (awarding emotional distress damages because the creditor froze the debtor's checking account and the debtor was forced to cancel her child's birthday party); *Fisher v. Blackstone Fin. Servs., Inc. (In re Fisher),* 144 B.R. 237, 239 (Bankr.D.R.I.1992) (awarding emotional distress damages because the creditor repossessed the debtor's car at a creditor's meeting over the objections and warning of the debtor's counsel); *In re Carrigan,* 109 B.R. 167, 170 (Bankr.W.D.N.C. 1989) (awarding emotional distress damages because the creditor went to the debtor's house and abusively demanded money); *Wagner v. Ivory (In re Wagner),* 74 B.R. 898, 900 (Bankr.E.D.Pa.1987) (awarding emotional

Under Restatement (2d) of Torts § 47 ("§ 47"), emotional distress may be an element of damages where other interests have been invaded, and tort liability has arisen apart from the emotional distress:

Where the actor's tortious conduct in fact results in the invasion of another legally protected interest, . . . emotional distress *caused* either by the resulting invasion or by the conduct may be a matter to be taken into account in determining the damages recoverable. In many instances there may be recovery for emotional distress as an additional, or "parasitic" element of damages in an action for such a tort.

RESTATEMENT (2d) OF TORTS § 47 comment b (emphasis added).

We note that Restatement (2d) of Torts § 46 ("§ 46"), which subjects a defendant to liability for emotional distress if his conduct is "extreme and outrageous," is not applicable here. Section 46 "creates liability only where the actor intends to invade the interest in freedom from severe emotional distress." RESTATEMENT (2d) OF TORTS § 47 comment a. In other words, § 46 views the intentional infliction of emotional distress as an independent tort unrelated to any other wrongful or tortious conduct. *Id.; see also Patton v. Univ. of Chicago Hospitals,* 706 F.Supp. 627, 631 (N.D.Ill.1989); *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 580, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). Here, because the emotional distress award stemmed from § 362(h), § 46 is not applicable. *See Gruenberg,* 9 Cal.3d at 580, 108 Cal.Rptr. 480, 510 P.2d 1032.

■■■ Therefore, following comment b to § 47, it stands to reason that emotional distress should be an element of actual

distress damages because the creditor broke into the debtor's house and threatened to

damages incidental to a willful violation of the automatic stay. This makes perfect sense because the automatic stay is intended to protect legal interests of the debtor. In using the term "actual damages" in § 362(h), Congress obviously intended to give debtors substantial latitude in seeking damages for willful violation of the automatic stay. There is nothing in the statute nor the legislative history that indicates that courts should restrictively apply § 362(h). Additionally, a willful violation of the automatic stay is analogous to intentional torts that cause actual damages from the impact on legally protected rights. *See, e.g., Davis v. Courington (In re Davis),* 177 B.R. 907, 911 (9th Cir. BAP 1995) ("Willful violation of the automatic stay is an intentional tort for which compensatory and punitive damages may be awarded"). Therefore, we follow the Seventh Circuit in holding that emotional distress damages are recoverable under § 362(h), subject to the threshold described below.

The Ninth Circuit recently addressed the issue of emotional distress damages incidental to tortious conduct in *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.,* 219 F.3d 895 (9th Cir.2000), stating:

[t]hough emotional distress must be severe to be actionable by itself, no heightened showing is required to obtain damages for mental suffering that naturally ensues from the commission of a distinct and independent tort. The requirement of severity is designed to address " 'the fear of fictitious or trivial claims, distrust of the proof offered, and the difficulty of setting up any satisfactory boundaries to liability' " when no injury other than emotional distress is alleged.

"blow [his] brains out").

These concerns are mitigated when "substantial damages for loss of property" corroborate the plaintiff's mental suffering. A plaintiff may therefore recover damages for nonsevere emotional distress ensuing from tortious conduct that also results in **significant economic loss.**

*Id.* at 903 (citing *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973) and RESTATEMENT (2d) OF TORTS § 46) (emphasis added).[9] "Thus, once the threshold requirement of economic loss is met, the [plaintiff] need not show additional loss or injury to recover damages for his mental distress as long as such damages were proximately caused by [the host cause of action]." *Pershing Park,* 219 F.3d at 904 (quoting *Gourley v. State Farm Mut. Auto. Ins. Co.,* 53 Cal.3d 121, 128, 3 Cal.Rptr.2d 666, 822 P.2d 374 (1991)).

■ Here, in order to be entitled to emotional distress damages, there must be significant economic loss caused by the willful violation of the automatic stay. This is in keeping with the Ninth Circuit's standard set forth in *Pershing Park.* Therefore, Debtor must first show a significant economic loss caused by the stay violation and then establish that his loss caused him emotional injury. Because the court did not apply the above standard in awarding the $13,000 in emotional distress damages,[10] we remand for the bankruptcy court to decide whether emotional distress damages are appropriate here.

### E. *The Court Did Not Err in Denying Punitive Damages to Debtor.*

The court denied Debtor's request for punitive damages because it did not find that Bi–Rite acted with sufficient recklessness to warrant such an award. On appeal, Debtor contends that the court erred because it applied a "balancing of the equities" test.

■ Section 362(h) provides that an individual injured by a willful violation of a stay "shall recover actual damages . . . and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). However, punitive damages should not be awarded absent actual damages. *See McHenry v. Key Bank (In re McHenry),* 179 B.R. 165, 168 (9th Cir. BAP 1995).

■ Further, "[p]unitive damages will be awarded only if a defendant's conduct was malicious, wanton or oppressive." *Ramirez v. Fuselier (In re Ramirez),* 183 B.R. 583, 590 (9th Cir. BAP 1995). Punitive damages are also warranted if the violator engaged in "egregious, intentional misconduct." *McHenry,* 179 B.R. at 168.

In *Goichman v. Bloom (In re Bloom),* 875 F.2d 224 (9th Cir.1989), the Ninth Circuit held that it has "traditionally been reluctant to grant punitive damages absent some showing of reckless or callous disregard for the law or rights of others." *Id.* at 228.

Here, the court denied punitive damages after a balancing of equities:

The Court noted during trial that in balancing the equities between a three-time debtor lacking in credibility and a overly-aggressive collection attorney, an award of punitive damages was unlikely. . . . Finally, the Court adds that had

---

9. We note that *Pershing Park* did not specifically refer to § 47. However, it cited *Gruenberg,* which mentioned § 47. *See Gruenberg,* 9 Cal.3d at 580, 108 Cal.Rptr. 480, 510 P.2d 1032.

10. Rather, the court rejected *Aiello* in favor of *Fleet Mortgage,* which had no limitation on making an award for emotional distress damages.

the defendants waited only thirteen days, they could have brought the suit without being in violation of the automatic stay. Hence, taken together there are insufficient egregious factors to warrant an award of punitive damages. Findings of Fact, Opinion and Conclusions of Law (Jul. 10, 2002), at 19.

On appeal, Debtor contends that the bankruptcy court erred in imposing a balancing of equities standard in denying punitive damages. According to Debtor, punitive damages are warranted because the court found that Bi–Rite acted "cavalierly, nonchalantly and continuously in violation of the stay." Appellant's Opening Brief (Oct. 15, 2002), at 17. Although the court found that Bi–Rite willfully violated the automatic stay and that its actions "may have represented an arrogant defiance of the law," it held that Bi–Rite did not act with sufficient recklessness and egregiousness to warrant an award of punitive damages. Findings of Fact, Opinion and Conclusions of Law (Jul. 10, 2002), at 18. On appeal, Debtor does not offer other evidence of Bi–Rite's egregious conduct.

 A bankruptcy court has discretion in granting or denying punitive damages under § 362(h). *See Franchise Tax Bd. v. Roberts (In re Roberts)*, 175 B.R. 339, 344 (9th Cir. BAP 1994). Here, the court properly balanced the equities and found that Debtor lacked credibility. Because a willful violation of the automatic stay does not require a specific intent to violate the stay, the court did not abuse its discretion in finding that Bi–Rite did not engage in egregious conduct. *Id.* Therefore, it is within the court's discretion to deny Debtor's request for punitive damages. Accordingly, the court did not err in denying punitive damages to Debtor. *See McHenry*, 179 B.R. at 168.

**F. *Debtor is Not Entitled to Attorney's Fees on Appeal.***

On appeal, Debtor requested attorney's fees and costs pursuant to § 362(h) because "[s]uch additional damages are mandatory." Appellant's Reply Brief (Dec. 12, 2002), at 17.

 "A successful debtor is entitled to recover attorney's fees and costs incurred in resisting a nonfrivolous appeal of a § 362(h) order. Such additional damages are mandatory under § 362(h)." *Roman*, 283 B.R. at 15 (citing *Walsh*, 219 B.R. at 878).

In *Walsh*, we held that when a court determines that a creditor willfully violated the automatic stay, "the bankruptcy court is required to award actual damages clearly traceable to and reasonably incurred as a result of the stay violation, including damages suffered by a debtor for 'having to resort to the courts to enforce his rights.'" *Walsh*, 219 B.R. at 879 (Ryan, J., concurring).

 Here, the court entered a § 362(h) order granting attorney's fees and emotional distress damages to Debtor and denying Debtor's request for punitive damages. Debtor appealed on both the attorney's fees and punitive damages issues. We affirm the court on these issues. Therefore, Debtor is not "successful" in upsetting the § 362(h) order, and he is not entitled to attorney's fees on appeal. *See Roman*, 283 B.R. at 15.

## V. CONCLUSION

In sum, the court did not (1) violate Debtor's due process rights; (2) err in denying the annulment of the automatic stay; (3) err in awarding attorney's fees in the amount of $26,065,37 to Debtor; or (4) err in denying punitive damages to Debtor.

However, the bankruptcy court should have applied the standard set forth in *Pershing Park* in awarding emotional distress damages. As such, we remand for the bankruptcy court to decide whether emotional distress damages are appropriate here.

Finally, Debtor is not entitled to attorney's fees on appeal.

AFFIRMED in part, VACATED in part and REMANDED.

KLEIN, Bankruptcy Judge, dissenting in part.

I join the majority opinion on all issues except the emotional distress damages. Moreover, I agree that emotional distress damages were intended by Congress to be available under § 362(h).

I do not agree, however, that either "significant economic loss" or "financial loss" caused by willful violation of the automatic stay must be demonstrated before emotional distress damages may be awarded and would affirm the $13,000 award without requiring further proceedings. Nor do I agree that there is a controlling Ninth Circuit standard for § 362(h) emotional distress damages, the *Pershing Park Villas* case being a diversity case applying state law providing a specialized rule for certain insurance law torts. Nor would I follow the Seventh Circuit's rule in *Aiello* because its requirement of financial loss is based on flawed assumptions that ignore significant human elements present in § 362(h).

I submit that § 362(h) functions as a bankruptcy tort. The individual debtor has a legally protected interest in being free of acts that violate the automatic stay. The invasion of that interest warrants a remedy. The standard remedy available in all bankruptcy cases is contempt, which may be compensatory contempt. A special remedy, § 362(h), was created by Congress that is limited to individuals damaged by willful stay violations.

Congress tells us on the face of § 362(h) several important things about the remedy. First, "actual damages" are available. Second, "costs and attorneys' fees" are included as an element of "actual damages." Third, "punitive damages" may be awarded in "appropriate circumstances."

Two questions relating to emotional distress are before us. First, whether emotional distress damages are a permitted form of § 362(h) "actual damages." Second, what conditions must exist to warrant emotional distress damages under § 362(h).

The answers to those questions, in my view, are informed in significant respects by the tort damages model. By providing for "actual" and "punitive" damages in general terms, it follows that Congress was incorporating the well-established meanings of those terms, which are mainly tort damage concepts. Congress varied the tort model in one respect as to which it was, and had to be because it was varying the standard tort damages rule, specific: including costs and attorneys' fees as an item of "actual" damages ("actual damages, including costs and attorneys's fees").

In effect, Congress created a federal tort out of willful stay violations against individuals, leaving the details regarding damages (save for the inclusion of costs and attorneys' fees as an item of damages) to federal common law.

Federal common law relating to tort damages is generally informed by the *Restatements*. Emotional distress figures in basic tort law in two respects: as an independent basis for imposing tort liability and as an element of damages for the

invasion of some other legally-protected interest.

Imposing liability merely on account of infliction of emotional distress requires, as the majority notes, that the offending conduct have been "extreme and outrageous." RESTATEMENT (2D) OF TORTS § 46 (1977). In contrast, emotional distress caused by the invasion of some other legally-protected interest is merely what the *Restatement* terms "an additional, or 'parasitic' element of damages." *Id.* § 47 cmt. b.

Emotional distress damage awards under § 362(h) fall into the latter damages category, the willful violation of the automatic stay being the invasion of the legally-protected interest. Up to this point, the majority and I are on common ground.

I part company with the majority on how one goes about determining how, and under what limits, § 362(h) emotional distress damages should be determined. The majority would require proof of a significant economic loss as prerequisite to an emotional distress award; I submit that emotional distress damages may stand alone.

*Restatement* § 905 ("Compensatory Damages for Nonpecuniary Harm") and *Restatement* § 912 ("Certainty") provide the guideposts.

The general rule is that compensatory damages may be awarded for emotional distress without proof of pecuniary loss to the plaintiff. *Id.* § 905. The rationale is that the principal harm for many torts—such as battery, assault, defamation, and malicious prosecution—is the "disagreeable emotion experienced by the plaintiff." *Id.* § 905 cmt. c.[11] The effect of automatic stay violations on individual consumers can be of the same nature and quality.

The basic measure of damages for emotional distress is fair compensation to reflect the duration of the harm to the feelings and the intensity of the distress based on all relevant circumstances, including sex, age, condition in life and any other fact indicating the susceptibility of the plaintiff to this type of harm. The limit is that the award cannot exceed what a "reasonable person could possibly estimate as fair compensation." *Id.* § 905 cmt. i.[12]

---

**11.** The comment explains:

> comment c. *Emotional distress in general.* The principal element of damages in actions for battery, assault or false imprisonment, as well as in actions for defamation, malicious prosecution and alienation of affections, is frequently the disagreeable emotion experienced by the plaintiff. In other cases, protection against disagreeable emotions not involving bodily pain is ordinarily given only in an action for infringement of some other interest. Thus one who insults or annoys another, thereby causing a third person to suffer fright or physical discomfort, is ordinarily not subject to liability to the third person unless bodily harm results. (See §§ 312 and 313). Whether there can be an action merely for harm to the feelings presents a question of the existence of the cause of action and is not a problem of the amount of damages.
>
> RESTATEMENT (2D) OF TORTS § 905 cmt. c.

**12.** The comment explains:

> comment i. *Measure of recovery.* The length of time during which pain or other harm to the feelings has been or probably will be experienced and the intensity of the distress are factors to be considered in assessing the amount of damages. In determining this, all relevant circumstances are considered, including sex, age, condition in life and any other fact indicating the susceptibility of the injured person to this type of harm. As stated in § 910, damages include an amount for the harm suffered to the time of trial and in some cases for that estimated for the future. On mitigation of damages because of provocation by the plaintiff in cases of intended physical harm, see § 921.
>
> As stated in § 912, Comment b, there is no rule of certainty with reference to the amount of recovery permitted for any particular type of emotional distress; the *only limit is such an amount as a reasonable*

Nor are emotional distress damages crippled by a rule of certainty. Rather, *Restatement* § 912 merely requires that there be proof of the amount of money representing adequate compensation with "as much certainty as the nature of the tort and the circumstances permit." *Id.*

§ 912. The rationale is that there should be a balance between the interest of proof and the interest of providing a substantial remedy for an incontestable harm. *Id.* § 912 cmt. a.[13] When it comes to emotional distress, certainty is impossible. *Id.* § 912 cmt. b.[14] The best that can be done is to

person could possibly estimate as fair compensation. Thus damages can be recovered for the feeling of mortification resulting from a scar or deformity produced by the defendant's act or for the sorrow that a prospective mother would feel over the failure to have her child born alive. Nevertheless, when there is a claim of an excessive or unusual emotional distress, the rules as to causation stated in §§ 435A, 435B and 917 and the rules as to proof of the existence of such a disturbance as stated in § 912, Comment a, are applicable. The extent and duration of emotional distress produced by the tortious conduct depend upon the sensitiveness of the injured person. The court, however, will not permit consideration of disturbances which, conceding full weight to individuality, are wholly abnormal and unreasonable. Thus, unless a recognizable mental disease results, there can be no recovery for a long-continued morbid propensity to fear death from rabies, if there is proof that the dog that bit the injured person was healthy, nor can there be recovery for the totally unfounded fear of a woman that an injury has prevented her from ever being able to have a child.
RESTATEMENT (2D) OF TORTS § 905 cmt. i (emphasis supplied).

13. The comment explains:
comment a.... It is desirable that responsibility for harm should not be imposed until it has been proved with reasonable certainty that the harm resulted from the wrongful conduct of the person charged. It is desirable, also, that there be definiteness of proof of the amount of damage as far as is reasonably possible. It is even more desirable, however, that an injured person not be deprived of substantial compensation merely because he cannot prove with complete certainty the extent of harm he has suffered. Particularly is this true in situations where there can not be any real equivalence between the harm and compensation in money, as in case of *emotional distur-*

*bance,* or where the harm is of such a nature as necessarily to prevent anything approximating accuracy of proof, as when anticipated profits of a business have been prevented. The requirements vary with the possibilities for making a reasonably exact estimate of the amount of harm measured in terms of money ....
RESTATEMENT (2D) OF TORTS § 912 cmt. a (emphasis supplied).

14. The comment explains:
b. Harm to body, *feelings* or reputation. For harm to body, feelings or reputation, compensatory damages reasonably proportioned to the intensity and duration of the harm can be awarded without proof of amount other than evidence of the nature of the harm. There is no direct correspondence between money and harm to the body, feelings or reputation. There is no market price for a scar or for loss of hearing since the damages are not measured by the amount for which one would be willing to suffer the harm. *The discretion of the judge or jury determines the amount of recovery, the only standard being such an amount as a reasonable person would estimate as fair compensation.* In these cases the trier of fact can properly award substantial damages as compensation for harms that normally flow from the tortious injury even without specific proof of their existence, such as pain from a blow or humiliation from a scar. Evidence to prove that the harm is greater or less than that which ordinarily follows is admissible. The most that can be done is to note such factors as the intensity of the pain or humiliation, its actual or probable duration and the expectable consequences. Since these factors are all indefinite (see § 905), it is impossible to require anything approximating certainty of amount even as to past harm. On the recovery for *harm to feelings* threatened from harm already caused by the tortious conduct there is even more indefiniteness.

rely upon the reasonableness of the trier of fact.

There is no reason that the *Restatement's* approach to determination of emotional distress damages should not pertain to § 362(h) emotional distress damages. The *Restatement* generally represents the mainstream view. The intent of Congress in providing for "actual damages," without more specific direction (other than to make costs and attorneys' fees compensable as damages), presumably would be to draw the rules from the mainstream of the law.

This analysis is supported by the fact that Congress chose to limit the § 362(h) remedy to "individual" human beings. Individuals have feelings. Moreover, individuals in bankruptcy are overwhelmingly persons of limited financial sophistication who have reached a last resort where Congress has assured them that the automatic stay will protect them for a while from the depredations of creditors. Those individuals are correspondingly vulnerable to a profound sense of betrayal and upset by invasions of the protection Congress has promised them.

It is for this reason that the requirement of the Seventh Circuit in *Aiello* that there be financial harm before emotional distress damages can be awarded runs counter to the intent of Congress expressed in the creation of the § 362(h) remedy for "individuals." Moreover, the Seventh Circuit's assertions (239 F.3d at 879) that the automatic stay is "financial in nature" and not intended to protect "peace of mind" and that the "Bankruptcy Code was not drafted with reference to the emotional incidents of bankruptcy" are belied by the legislative history of the Bankruptcy Code.

One important rationale for Congress enacting the automatic stay was unambiguously non-financial:

RESTATEMENT (2D) OF TORTS § 912 cmt. b (em-

Frequently, a consumer debtor is severely harassed by his creditors when he fall behind in payments on loans. The harassment takes the form of abusive phone calls at all hours, including at work, threats of court action, attacks on the debtor's reputation, and so on. The automatic stay at the commencement of the case takes the pressure off the debtor.

H. Rep. No. 95–595, at 125–26 (1977), U.S.Code Cong. & Admin.News 1978, at 5963, 6086–87. These concerns are directed to "peace of mind" and to "emotional incidents of bankruptcy" that are more psychological than financial.

Similarly, Congress explained how creditors would exploit unfair psychological tactics by taking a security interest in all the debtor's belongings (including family photographs and the family dog and other items of little or no real value) and then:

If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.

In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditor in the debtor's hands, for they provide a credible basis for the threat, because replacements costs of the goods are generally high....

... Such security interests have too often been used by over-reaching creditors. The bill eliminates any unfair advantage creditors have.

*Id.* at 127, U.S.Code Cong. & Admin.News 1978, at 5963, 6088. These "emotional incidents of bankruptcy" were plainly prominent in the drafting of the Bankruptcy Code.

phasis supplied).

Nor is the concern, expressed by the majority and the Seventh Circuit, about potential for abuse of emotional distress damages well-founded. 239 F.3d at 880–81. The availability of such damages is not likely to increase the number of § 362(h) matters that are filed. Emotional distress is not a basis for § 362(h) liability. Rather, emotional damages do not come into play until after it has been demonstrated that there is § 362(h) liability for a willful violation of the automatic stay.

As to the Seventh Circuit's sense that emotional distress is "so easy to manufacture," the first part of the answer is that it is one thing to assert emotional distress, but it is quite another thing to persuade a bankruptcy judge to find that emotional distress existed. Second, the type of considerations that are articulated in the *Restatement* comments discussed above would operate to introduce rational analysis that bankruptcy judges can take into account.

The concern of the majority and the Seventh Circuit for potential abuse, then, boils down to a concern that bankruptcy judges, in their capacity as triers of fact on § 362(h) matters, would abuse their authority to assess damages based on the evidence before them. While I doubt that bankruptcy judges would ever establish a pattern of abusing their authority to award emotional distress damages, I am confident that the appellate process would correct abuses.

In short, the Seventh Circuit's decision in *Aiello* is, with all respect, not a persuasive lead that we should follow.

Nor does the dictum in the Ninth Circuit's decision in *Pershing Park Villas* control the analysis of § 362(h) emotional distress damages. That decision, rendered in a diversity case, merely holds that California law pertaining to the tort of an insurer's bad faith refusal to defend requires a demonstration of significant economic loss. While I have no quarrel with the reasoning in that decision, I do not believe that it constitutes controlling authority for the federal law of damages question now before us.

The non-financial considerations that animated the initial enactment of the automatic stay and later addition of § 362(h) ought to be giving us great pause about engrafting threshold requirements of demonstrating financial loss or significant economic loss. Such requirements operate to limit the ability to remedy violations of the automatic stay and, correlatively, could embolden cynical creditors to terrorize debtors by way of stay violations in circumstances in which they are confident that their victims will not be able to show financial or significant economic loss. We should be reluctant to pull § 362(h)'s teeth.

In short, I would hold that emotional distress damages can be awarded under § 362(h) regardless of whether there is economic loss. The standards for awards should reflect the considerations articulated in the *Restatement (2d) of Torts* §§ 905 and 912. The ultimate limit is what "a reasonable person could possibly estimate as fair compensation."

In this instance, although I wonder whether I would have awarded $13,000 on what strikes me on a sterile appellate record as flimsy evidence, I cannot say that the court's findings were clearly erroneous or that the $13,000 emotional distress award was beyond what a reasonable person could possibly estimate as fair compensation for the creditor's long-term obduracy in attempting to perpetuate the fruit of a violation of the automatic stay. Hence, I would affirm on all counts and, to that extent, DISSENT.